**Lansing, Michigan**

# Opinion

Chief Justice:                    Justices:
Robert P. Young, Jr.    Michael F. Cavanagh
                                  Marilyn Kelly
                                  Maura D. Corrigan
                                  Stephen J. Markman
                                  Diane M. Hathaway
                                  Mary Beth Kelly

FILED JANUARY 14, 2011

S T A T E   O F   M I C H I G A N

SUPREME COURT

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

No. 139969

DONALD ALLEN LOWN,

        Defendant-Appellant.

BEFORE THE ENTIRE BENCH (except MARY BETH KELLY, J.)

CORRIGAN, J.

This case requires us to clarify the correct interpretation of the statutory "180-day rule" established by MCL 780.131 and MCL 780.133. The object of this rule is to dispose of new criminal charges against inmates in Michigan correctional facilities; the rule requires dismissal of the case if the prosecutor fails to commence action on charges pending against an inmate within 180 days after the Department of Corrections (DOC) delivers notice of the inmate's imprisonment. We reaffirm that the rule does not require that a *trial* be commenced or completed within 180 days of the date notice was delivered. Rather, as this Court has held for more than 50 years, it is sufficient that the prosecutor

"proceed promptly" and "move[] the case to the point of readiness for trial" within the 180-day period. *People v Hendershot*, 357 Mich 300, 304; 98 NW2d 568 (1959). Significantly, although a prosecutor must proceed promptly and take action in good faith in order to satisfy the rule, there is no good-faith *exception* to the rule. Instead, as originally articulated in *Hendershot*, good faith is an implicit component of proper action by the prosecutor, who may not satisfy the rule simply by taking preliminary steps toward trial but then delaying inexcusably. We further clarify that the statutory 180-day period is, by the plain terms of the statute, a fixed period of consecutive days beginning on the date when the prosecutor receives the required notice from the DOC. Thus, the relevant question is not whether 180 days of delay since that date may be attributable to the prosecutor, but whether action was commenced within 180 calendar days following the date the prosecutor received the notice. If so, the rule has been satisfied unless the prosecutor's initial steps are "followed by inexcusable delay beyond the 180-day period and an evident intent not to bring the case to trial promptly . . . ."[1] Accordingly, a court should not calculate the 180-day period by apportioning to each party any periods of delay after the DOC delivers notice. Finally, we note that a violation of the 180-day rule—which deprives the court of "jurisdiction," MCL 780.133—specifically divests the court of *personal jurisdiction* over the defendant for the particular action.

The statutory 180-day rule was satisfied here because the prosecutor commenced action well within 180 days after receiving notice from the DOC, "proceed[ed] promptly and with dispatch thereafter toward readying the case for trial," and "[stood] ready for

---

[1] *Hendershot*, 357 Mich at 303.

2

trial within the 180-day period . . . ."[2]  Moreover, the record contains no evidence that ensuing delays caused in part by docket congestion were without reason or otherwise inexcusable under the facts of this case; indeed, defendant either requested or explicitly consented to each adjournment.  For these reasons, we affirm the judgment of the Court of Appeals.

## I.  FACTS AND PROCEEDINGS

### A.  SEPTEMBER 2005 TO JULY 2006

Proceedings in this case began in September 2005 when the Saginaw County Prosecuting Attorney charged defendant, Donald Allen Lown, with second-degree home invasion.[3]  Defendant was arrested and held in the Saginaw County jail.  Because defendant was on parole, the DOC issued a parole violation hold; accordingly, defendant was ineligible for release on bond.  Defendant's initial period of confinement in the county jail—from September 2005 through early May 2006—is not the basis for his current claim that the statutory 180-day rule was violated.  But the events of this period in part explain why defendant still had not been tried as of August 8, 2008, when he filed this appeal.

Defendant was arraigned in the Saginaw Circuit Court on November 7, 2005.  A joint trial with his codefendant was scheduled to begin on February 7, 2006.  The trial was postponed after the court granted a motion for separate trials filed by defendant's

---

[2] *Id.* at 304.

[3] MCL 750.110a(3).

3

first appointed attorney, Keith Skutt. Defendant subsequently offered to plead guilty. A plea hearing was scheduled for January 30, 2006. By the time of the hearing, however, defendant had changed his mind about the plea and requested a new attorney. Skutt moved to withdraw from representation and stated that defendant was "willing to waive his right to trial within 180 days" to await new counsel. The court denied the motion to withdraw. Without objection by either party, the trial was ultimately rescheduled for May 9, 2006, in part because of docket congestion.

On April 20, 2006, defendant moved for release on bond—or, in the alternative, for dismissal of the home-invasion charge—because he had been jailed for more than 180 days and the trial had yet to commence. On May 1, 2006, the court granted the motion for a personal recognizance bond under MCR 6.004(C), which allows for the release on bond of defendants who are jailed for more than 180 days as a result of pending charges. The court initially delayed ruling on defendant's alternative argument that dismissal was required under the statutory 180-day rule and MCR 6.004(D), which apply to inmates of correctional facilities.[4] The prosecutor responded that the statutory rule did not apply to defendants held in county jails or to parole detainees. Meanwhile, as a result of the court's order releasing defendant on bond for the pending charge, the DOC took defendant into custody on May 4, 2006, for violating parole.

The court denied defendant's motion to dismiss under the statutory 180-day rule in an order entered on June 16, 2006, citing *People v Chavies*, 234 Mich App 274; 593

---

[4] The rule requiring a personal recognizance bond, MCR 6.004(C)—which applies a 180-day period in certain felony cases—is distinct from the statutory 180-day rule at issue here. The statutory rule, MCL 780.131 and MCL 780.133, is reflected in MCR 6.004(D).

4

NW2d 655 (1999).[5] Defendant claims that, after he was reimprisoned by the DOC, no one took steps to ensure his availability for the May 9, 2006, trial; he claims that this failure to act caused the court to reschedule the trial for July 5, 2006. By stipulation of the parties, however, the July 5 date was adjourned and the trial was rescheduled for September 19, 2006, to accommodate defense counsel's summer vacation plans. On July 17, 2006, Skutt filed another motion to withdraw as counsel, stating that defendant had filed a grievance against him with the Attorney Grievance Commission. On July 28, 2006, the court granted Skutt's motion to withdraw and appointed a second attorney, Timothy Lynch, to represent defendant.

Around this time the DOC sent certified written notice of defendant's incarceration to the prosecutor as required by MCL 780.131. The prosecutor received the

---

[5] As we will discuss further, the court and parties appear to have been unaware that, two days before the trial court's June 16, 2006, order, this Court overruled the relevant aspects of *Chavies* in *People v Williams*, 475 Mich 245; 716 NW2d 208 (2006). Defendant's appellate counsel concedes, however, that the *Williams* opinion did not entitle defendant to dismissal under the 180-day rule at the time of his first motion to dismiss.

notification no later than July 22, 2006.[6] Thus, the statutory 180-day period relevant to this appeal began on July 23, 2006.[7]

## B. SEPTEMBER 2006 TO APRIL 2008

On the next scheduled trial date of September 19, 2006, defendant rejected a plea agreement offered by the prosecutor. Lynch moved for an adjournment to allow more time for trial preparation. Defendant stated on the record that he had no objection to the adjournment. The trial was rescheduled for November 28, 2006. On that date, the parties again appeared. Defendant rejected yet another plea offer from the prosecutor, and both sides were prepared for trial. But, because defendant was imprisoned with the DOC on prior convictions as a result of his parole violation—that is, he was not incarcerated as a result of the pending charge—the court itself adjourned the trial so proceedings against local jail inmates could take precedence. The court stated that defendant "will be tried next year." Neither party objected.

The trial was next scheduled to begin on April 24, 2007. At a hearing on that date the court denied defendant's motion to dismiss Lynch and asserted that jury selection

---

[6] Defendant states that the prosecutor received notice no later than July 22, 2006. July 22, 2006, is also the date employed by the Court of Appeals in its analysis. Accordingly, we rely on the July 22 date here. Defendant nonetheless observes that the return receipt for the notice appears to have been signed by the prosecutor's office on July 19, 2006. Moreover, in its brief before the trial court, the prosecution admitted receiving notice on July 18, 2006, which was the date the trial court used in its analysis. Using either of the earlier possible receipt dates in our analysis would not change the outcome of this case.

[7] *Williams*, 475 Mich at 256 n 4 (stating that the 180-day period begins the day after the prosecution receives the written notice required by MCL 780.131).

6

would begin later that week. Off the record, the trial was adjourned yet again to July 11, 2007, apparently as a result of docket congestion. On July 11, 2007, the case was adjourned to September 5, 2007. The court explained simply: "We've taken the time here to determine when this case is going to be reset and everybody is going to be available."

The case was pushed to one day later, September 6, 2007, at which time the parties appeared and the prosecution stated that it was ready to proceed. But, in the meantime, Lynch had moved to withdraw as counsel, noting defendant's "antagonistic, demeaning, denigrating attitude" towards him and stating that defendant had filed an unwarranted grievance against him with the Attorney Grievance Commission. The court granted the motion. James Tiderington was appointed as replacement counsel for the defense on September 12, 2007.

The trial was rescheduled for December 4, 2007. On that date, the court granted Tiderington's motion for an adjournment in order to file a motion to dismiss under the statutory 180-day rule. In a December 7, 2007, motion, Tiderington observed that the Court of Appeals' opinion in *Chavies*—on which the trial court relied in its June 16, 2006, order denying defendant's first motion to dismiss—had been overruled by the June 14, 2006, *Williams* decision. The court ordered briefing and held two hearings to consider the issue.

In an April 15, 2008, opinion and order, the court denied defendant's motion. It noted that, although 180 days had passed since the prosecutor received notice from the

7

DOC, the "good faith exception" to the 180-day rule precluded dismissal.[8] The prosecution had taken good-faith action toward preparing for trial within the 180-day period—indeed it was, "at all times, ready, willing and able to proceed with trial of this case"—and "[a]ll adjournments were made at the Defendant's request or otherwise beyond the Prosecution's control." Over the prosecutor's objection, the court also granted defendant's motion to stay the proceedings while defendant appealed its ruling in the Court of Appeals.

## C. APPELLATE PROCEEDINGS

The Court of Appeals[9] affirmed in part, concluding that the statutory 180-day rule did not require dismissal of the home-invasion charge.[10] Citing *People v Crawford*, 232 Mich App 608, 613-615; 591 NW2d 669 (1998), the Court began by calculating the period of delay specifically attributable to the prosecution or the court, and not

---

[8] The court cited caselaw that included *Hendershot*.

[9] *People v Lown*, unpublished opinion per curiam of the Court of Appeals, issued October 1, 2009 (Docket No. 287033). The Court of Appeals had initially denied defendant's application for leave to appeal "for failure to persuade the Court of the need for immediate appellate review." *People v Lown*, unpublished order of the Court of Appeals, entered October 30, 2008 (Docket No. 287033). Defendant applied for leave to appeal in this Court and we remanded, directing the Court of Appeals to consider the case as on leave granted. *People v Lown*, 483 Mich 893 (2009).

[10] The Court of Appeals remanded for further proceedings before the trial court concerning defendant's separate claim—which was not addressed by the trial court—that the delays deprived him of his constitutional right to a speedy trial under the United States and Michigan Constitutions and related statutory and court rule provisions. US Const, Am VI; Const 1963, art 1, § 20; MCL 768.1; MCR 6.004(A). This issue is not currently before us.

attributable to defendant, beginning on July 23, 2006. The Court concluded that more than 180 days of the total delay were caused by docket congestion or unexplained factors that must be attributed to the prosecution under *People v England*, 177 Mich App 279, 285; 441 NW2d 95 (1989).

Nonetheless, the Court concluded that dismissal was not required because the prosecution was "ready and willing to go to trial at least as early as September 19, 2006."[11] The Court observed that this date was "well within the initial 180-day period, and it appears from the record that the prosecution had made a good-faith effort to proceed to trial at that time."[12] Thus, the Court concluded that the 180-day rule was not violated, applying the reasoning of *People v Michael Davis*, 283 Mich App 737; 769 NW2d 278 (2009). *Davis* relied on this Court's decision in *Hendershot* to conclude that "'trial or completion of trial'" within the 180-day period is unnecessary to satisfy the statutory rule; rather, if "'apparent good-faith action is taken well within the [180-day] period and the people proceed promptly and with dispatch thereafter toward readying the case for trial, the condition of the statute for the court's retention of jurisdiction is met.'"[13]

Defendant petitioned this Court to review the Court of Appeals' judgment. We granted his application for leave to appeal and directed the parties to include among the issues to be briefed

---

[11] *Lown*, unpub op at 4.

[12] *Id.*

[13] *Davis*, 283 Mich App at 741, quoting *Hendershot*, 357 Mich at 304.

9

(1) whether the 180-day rule, MCL 780.131 and 780.133, is jurisdictional, and if so, whether it permits any delay in trial beyond 180 days from the date of the Department of Corrections notice; (2) whether a strict jurisdictional reading of the rule violates a defendant's constitutional rights when a delay in trial beyond the 180 days is sought by the defendant, as occurred in this case; (3) whether, if some delay in trial beyond 180 days is permitted by the statutory provisions, any such delay should be evaluated by attributing it to the defendant or the prosecution, and if so, whether action of the circuit court, such as delay due to docket management concerns, should automatically be attributed to the prosecution; (4) whether a prosecutor's good-faith efforts to bring a defendant to trial within the initial 180-day period is of any relevance in the application of the statutory provisions, and if so, whether the prosecutor must remain prepared at all times to go to trial in order to avoid dismissal of the case under the rule; and (5) if this Court were to determine that the 180-day rule is jurisdictional and does not permit any delays in the commencement of trial, whether and to what extent that determination should be applied retroactively.[14]

## II. STANDARD OF REVIEW

This case requires us to consider the meaning and proper application of MCL 780.131 and MCL 780.133. We review de novo questions of statutory interpretation.[15] Our goal when interpreting a statute is to "ascertain and give effect to the intent of the Legislature" as manifested in the plain language of the statute.[16] If the language is "clear and unambiguous," we need go no further; courts will not engage in additional judicial construction of an unambiguous statute.[17]

---

[14] *People v Lown*, 485 Mich 1036 (2010).

[15] *People v Charles Davis*, 468 Mich 77, 79; 658 NW2d 800 (2003).

[16] *Id.*

[17] *Id.*

## III.  DISCUSSION

## A.  INTERPRETATION OF THE STATUTORY 180-DAY RULE

The relevant subsection of MCL 780.131 provides:

> Whenever the department of corrections receives notice that there is pending in this state any untried warrant, indictment, information, or complaint setting forth against any inmate of a correctional facility of this state a criminal offense for which a prison sentence might be imposed upon conviction, the inmate shall be brought to trial within 180 days after the department of corrections causes to be delivered to the prosecuting attorney of the county in which the warrant, indictment, information, or complaint is pending written notice of the place of imprisonment of the inmate and a request for final disposition of the warrant, indictment, information, or complaint.  The request shall be accompanied by a statement setting forth the term of commitment under which the prisoner is being held, the time already served, the time remaining to be served on the sentence, the amount of good time or disciplinary credits earned, the time of parole eligibility of the prisoner, and any decisions of the parole board relating to the prisoner. The written notice and statement shall be delivered by certified mail.[18]

Thus, MCL 780.131(1) states the general rule requiring that an inmate housed in a state correctional facility who has criminal charges pending against him "shall be brought to trial within 180 days after" the DOC delivers written notice of information concerning the inmate's imprisonment to the prosecuting attorney.  The 180-day period begins running on the day after the prosecutor receives the required notice.[19]

MCL 780.133 governs failure to comply with the 180-day rule:

> In the event that, within the time limitation set forth in [MCL 780.131], action is not commenced on the matter for which request for disposition was made, no court of this state shall any longer have

---

[18] MCL 780.131(1).

[19] *Williams*, 475 Mich at 256 n 4.

11

jurisdiction thereof, nor shall the untried warrant, indictment, information or complaint be of any further force or effect, and the court shall enter an order dismissing the same with prejudice.

This provision specifies that if "action is not commenced on the matter" within the 180-day period, the court loses jurisdiction and must dismiss the matter with prejudice. It does not employ the same word used in MCL 780.131(1); it does not state that the court loses jurisdiction if the *trial* has not begun. It also does not state that the court loses jurisdiction if the action is not *complete*. Rather, it requires the commencement—or *beginning*—of "action." In this context, the word "action" has complementary and relatively uncontroversial meanings. "Action" may encompass, for example, the "process of doing something; conduct or behavior," an act or a "thing done," or, in the context of court proceedings, a "civil or criminal judicial proceeding."[20] A "proceeding," in turn, generally includes the "regular and orderly progression of a lawsuit, including all acts and events between the time of commencement and the entry of judgment"; it may also mean an "act or step that is part of a larger action."[21] Thus, this Court has long held that to commence action within the 180-day period, a prosecutor need not ensure that the *trial* actually begins, or is completed, within that period. Rather, the prosecutor must have undertaken action—or, put otherwise, begun proceedings—against the defendant on the charges (or the "matter").[22] As we explained in *Hendershot*:

---

[20] Black's Law Dictionary (7th ed).

[21] *Id.*

[22] Contrast *People v Swafford*, 483 Mich 1, 3; 762 NW2d 902 (2009), in which we had "no choice" but to dismiss the charges with prejudice on the basis of the language of the Interstate Agreement on Detainers (IAD), MCL 780.601, which expressly premises dismissal on a prisoner not being "brought to trial within" 180 days of notice. *Swafford*

12

The statute does not require the action to be commenced so early within the 180-day period as to insure trial or completion of trial within that period. If . . . apparent good-faith action is taken well within the period and the people proceed promptly and with dispatch thereafter toward readying the case for trial, the condition of the statute for the court's retention of jurisdiction is met.[23]

Accordingly,

[w]hen the people have moved the case to the point of readiness for trial and stand ready for trial within the 180-day period, defendant's delaying motions, carrying the matter beyond that period before the trial can occur, may not be said to have brought the statute into operation, barring trial thereafter.[24]

On the other hand, if the prosecutor takes no action or delays inexcusably after taking preliminary steps, the rule may be violated:

Clearly, if no action is taken and no trial occurs within 180 days, the statute applies. If some preliminary step or action is taken, followed by inexcusable delay beyond the 180-day period and an evident intent not to bring the case to trial promptly, the statute opens the door to a finding by the court that good-faith action was not commenced as contemplated by [MCL 780.133], thus requiring dismissal.[25]

In this case, the Court of Appeals correctly relied on these propositions from *Hendershot*, as quoted by the Court of Appeals' decision in *Davis*.[26] The 180-day period

_____

explained that "[h]owever harsh and inflexible a remedy for failure to comply with the IAD this may be adjudged, it is plainly what our Legislature requires." *Swafford*, 483 Mich at 17. The distinct language of MCL 780.133 plainly does *not* require dismissal although a prisoner was not brought to trial within 180 days if the prosecutor nonetheless commenced action in the case within that period.

[23] *Hendershot*, 357 Mich at 304.

[24] *Id.*

[25] *Id.* at 303-304.

[26] *Lown*, unpub op at 4, quoting *Davis*, 283 Mich App at 741-742.

began July 23, 2006, and ended January 19, 2007. As the Court of Appeals concluded, the prosecutor not only commenced action within this period but was prepared to proceed to trial at least by September 19, 2006, which was the first scheduled trial date after the 180-day period commenced. Trial was postponed that day as the result of defense counsel's motion for adjournment; defendant himself expressly stated on the record that he did not object to the adjournment. The record further shows that the prosecutor remained ready for trial at subsequent rescheduled trial dates, including November 28, 2006; April 24, 2007; and September 6, 2007. On the next scheduled trial date, December 4, 2007, defendant moved to adjourn to bring the motion to dismiss under the 180-day rule that led to this appeal. In the words of the trial court, the prosecutor was, "at all times, ready, willing and able to proceed with trial of this case." Indeed, the record shows that the victims of the home invasion were also in the courtroom, ready to testify, on each of the numerous scheduled trial dates.

Further, the court itself appears to have been ready to proceed as of September 19, 2006, when defendant moved to adjourn. Later adjournments were attributable both to the defense and to docket congestion. The Court of Appeals has observed that the "burden imposed" by MCL 780.131 and MCL 780.133 "rests as much upon the court as upon the prosecutor" because "the scheduling of cases is not controlled by the prosecutor."[27] Accordingly, the Court of Appeals here relied on cases, including *England*, for the proposition that "'[a]ll adjournments without reason and unexplained delays are chargeable to the prosecution'" without regard to whether the prosecutor is

---

[27] *People v Wolak*, 153 Mich App 60, 65; 395 NW2d 240 (1986).

14

otherwise ready to proceed to trial.[28]  As we will discuss further, the Court of Appeals erred when calculating the 180-day period by attributing individual periods of delay to the parties.  But, to the extent that docket congestion could be relevant, clearly the congestion here was generally explained and excusable.  At several hearings, the court explicitly confirmed that defendant would not be prejudiced by further adjournments because he was imprisoned as a result of sentences for prior convictions to which any new sentences would be consecutive.  Indeed, several adjournments were necessary because other defendants, who unlike defendant were jailed solely as a result of pending charges, *would* be prejudiced by additional delays.  Finally, defendant did not object— and often explicitly consented—to the adjournments attributable to docket congestion.  Accordingly, even if the court was responsible for delaying the proceedings after action was commenced, first, the record does not reflect that the delays were unexplained or without reason in the context of this case, and, second, defendant waived or forfeited any error in this regard.

For these reasons, the trial court properly denied defendant's motion to dismiss the case under the 180-day rule, and the Court of Appeals properly affirmed that denial.  Action was commenced "well within the period," and the prosecution "proceed[ed] promptly and with dispatch thereafter toward readying the case for trial" and "[stood] ready for trial within the 180-day period."[29]  And there is no evidence that ensuing delays

---

[28] *Lown*, unpub op at 2, quoting *England*, 177 Mich App at 285, which cited, among other cases, *Wolak.*

[29] *Hendershot*, 357 Mich at 304.

15

caused by docket congestion were without reason or otherwise inexcusable under the facts of this case.

Moreover, this analysis alone was a sufficient basis for the lower courts' conclusions that the 180-day rule was satisfied. It was unnecessary for the Court of Appeals to calculate the number of days of delay attributable to the prosecutor, the court, or defendant beginning on July 23, 2006. The relevant statutory provisions do not describe the 180-day period as 180 total days *of delay* attributable to the prosecutor or court, after which the court may lose jurisdiction of the case. Rather, they plainly describe the period as a single term consisting of 180 consecutive days beginning at the time the DOC delivers the required written notice to the prosecutor. MCL 780.131(1) states that the inmate "shall be brought to trial *within 180 days after*" the DOC delivers notice. (Emphasis added.) MCL 780.133 similarly deprives the court of jurisdiction if "action is not commenced" "*within the time limitation* set forth in [MCL 780.131]." (Emphasis added.)

The practice of allocating periods of pretrial delay between the parties originates not from Michigan's statutory 180-day rule, but from jurisprudence governing the constitutional right to a speedy trial.[30] The necessary inquiries are distinct. The United

---

[30] Periods of pretrial delay may also be allocated in other circumstances when called for by the governing statute or rule. For example, the statute governing Michigan's 180-day rule stands in contrast to the IAD, which, as previously noted, premises dismissal not on the failure to *commence action* within 180 days of notice, as in MCL 780.133, but solely on a prisoner not being "brought to trial within" 180 days of notice. Accordingly, the IAD expressly permits—and thus excludes from the 180-day period—"necessary or reasonable continuance[s]" for "good cause shown in open court . . . ." MCL 780.601, art III(a).

States Supreme Court established a balancing test applicable to speedy trial cases in *Barker v Wingo*, 407 US 514; 92 S Ct 2182; 33 L Ed 2d 101 (1972), which this Court adopted in *People v Grimmett*, 388 Mich 590, 602-606; 202 NW2d 278 (1972).[31] Relevant factors under this test include the reasons for the pretrial delay and whether the defendant was prejudiced.[32] Accordingly, courts may consider which portions of the delay were attributable to each party when determining whether a defendant's speedy trial rights have been violated[33] and may attribute unexplained delays—or inexcusable delays caused by the court—to the prosecution.[34]

---

A day count and assignment of responsibility for periods of delay are also expressly required by Michigan's pretrial release rule, MCR 6.004(C), which applies to defendants who are incarcerated as a result of pending charges. Under this rule, "[i]n computing the 28-day and 180-day periods" after which a defendant generally must be released on personal recognizance during the pendency of the proceedings, "the court is to exclude" delays caused by various events including, for example, "adjournment[s] requested or consented to by the defendant's lawyer." MCR 6.004(C)(3).

The absence of any equivalent language in MCL 780.131 or MCL 780.133 referring to apportioning delay or granting continuances is highly significant. As noted, MCL 780.133 prescribes a harsh penalty—dismissal of the criminal charge with prejudice. It is entirely rational for the Legislature to have employed language that ensures that this penalty obtains only when "action is not commenced," rather than when the defendant is not "brought to trial," when it drafted a serious penalty provision that contains no mechanism for granting continuances or apportioning delay.

[31] See *People v Chism*, 390 Mich 104, 111; 211 NW2d 193 (1973); *People v Collins*, 388 Mich 680, 688; 202 NW2d 769 (1972).

[32] See *Barker*, 407 US at 530; *Chism*, 390 Mich at 111.

[33] See, e.g., *Chism*, 390 Mich at 112.

[34] See, e.g., *People v Ross*, 145 Mich App 483, 491; 378 NW2d 517 (1985); *People v Carner*, 117 Mich App 560, 577; 324 NW2d 78 (1982).

17

Some cases have employed these elements of the speedy trial test when reviewing motions for dismissal under the statutory 180-day rule. For example, in *Crawford*, 232 Mich App at 613, and *England*, 177 Mich App at 285—on which the Court of Appeals here relied—the Court applied the statutory 180-day rule in part by calculating how many days of delay were "chargeable" to the prosecutor after the prosecutor received the required DOC notice. But neither case offered a full explanation of why it imported the speedy trial test into this context. Rather, each case primarily cited portions of other cases that addressed speedy trial challenges.[35]

We clarify that the 180-day period addressed in MCL 780.131 and MCL 780.133 consists of the consecutive 180 days beginning on the day after the prosecutor receives the required notice from the DOC. The relevant threshold question is, therefore, not whether 180 days of delay since that date may be attributable to the prosecutor, but whether action was commenced within this 180-day period as described earlier, in accordance with *Hendershot*. If so, the rule has been satisfied unless the prosecutor's initial steps were "followed by inexcusable delay beyond the 180-day period and an evident intent not to bring the case to trial promptly . . . ."[36] Certainly, delays attributable to the prosecutor or the court both within and after the 180-day period may be relevant to whether delay beyond the period is inexcusable or whether the prosecutor lacked an

---

[35] *England*, 177 Mich App at 286, relied primarily on cases analyzing the constitutional right to a speedy trial, including *Barker*, 407 US at 527; *People v Patterson*, 170 Mich App 162; 427 NW2d 601 (1988), remanded on other grounds 437 Mich 895 (1990); and *Ross*, 145 Mich App 483. *Crawford*, 232 Mich App at 614, relied in part on *England*.

[36] *Hendershot*, 357 Mich at 303.

evident intent to bring the case to trial promptly. Accordingly, a court may find it necessary to consider the causes of delay. But doing so is unnecessary for calculating the statutory 180-day period, which is a fixed, consecutive period that, unlike periods of delay considered under a speedy trial analysis, is not subject to apportionment.

## B. THE PROSECUTOR'S DUTY TO ACT IN GOOD FAITH

We further clarify that, contrary to the trial court's assertion, the statutory 180-day rule has no judicially created "good-faith exception." The trial court observed that a so-called good-faith exception to the rule was created by the references to a prosecutor's good-faith action in *Hendershot*. But *Hendershot* should be read consistently with the plain language of MCL 780.133—not to create an exception that has no basis in the statutory text.

The text of MCL 780.133 clearly contemplates that a court may retain jurisdiction although 180 days have passed after the DOC sent the required notice as long as "action" was "commenced on the matter" within the 180-day period. *Hendershot* is best read as discussing good faith not as an exception to this requirement, but as an element of the action required within the 180-day period to avoid dismissal under MCL 780.133. Indeed, *Hendershot* defined commencing action as "good-faith action . . . taken well within the period" in order to ready the case for trial.[37] Significantly, it did so in part to explain that the trial *itself* need not take place within the period for the court to retain

---

[37] *Id.* at 304.

jurisdiction under MCL 780.133.[38] Thus, it effectively distinguished good-faith action to bring the case to trial from a mere "preliminary step or action" that is "followed by inexcusable delay beyond the 180-day period and an evident intent not to bring the case to trial promptly . . . ."[39] It concluded that, upon a showing that the prosecutor merely took such a preliminary step and then delayed and did not genuinely intend to bring the case to trial promptly, "the statute opens the door to a finding by the court that good-faith action was not commenced *as contemplated by [MCL 780.133]* . . . ."[40] In other words, a court may conclude that "action" was "commenced on the matter" within 180 days—and thus may maintain jurisdiction under MCL 780.133—only if the action was genuinely (or *in good faith*) taken to promptly bring the case to trial, *not* if the action was simply an initial step accompanied by a lack of genuine intent to move forward on the case, as evident in the prosecutor's subsequent action or inaction within or beyond the 180-day period. Accordingly, we overrule interpretations of *Hendershot* that characterize its discussion of good faith as a judicially created *exception* to the 180-day rule.

For example, we note *People v Walker*, 276 Mich App 528; 741 NW2d 843 (2007), vacated in part 480 Mich 1059 (2008), which the trial court in this case discussed. *Walker* cited *Hendershot* as creating a good-faith exception to the 180-day rule.[41] *Walker*

---

[38] *Id.* ("The statute does not require the action to be commenced so early within the 180-day period as to insure trial or completion of trial within that period.").

[39] *Id.* at 303.

[40] *Id.* at 303-304 (emphasis added).

[41] *Walker*, 276 Mich App at 538-539.

proceeded to conclude that this Court's opinion in *Williams* "implicitly overruled the 'good-faith' exception."[42] This Court vacated the *Walker* Court's references to the so-called exception as dicta.[43] As a result, the trial court in this case concluded that our order in *Walker* effectively indicated that the good-faith exception *persisted*, contrary to the *Walker* appeals panel's conclusion. But nothing in *Williams*, in our order in *Walker*, or in the amendment of MCR 6.004(D) either condones *or* condemns a good-faith *exception.* Nor did this Court's actions in these matters otherwise address whether the general requirement that a prosecutor ready himself for trial in good faith, as described in *Hendershot*, is consistent with the statutory language. Rather, as the Court of Appeals would later recognize in *Davis*, *Williams* declined to overrule *Hendershot* and, moreover, the good-faith issue was not directly before the Court in *Williams*.[44]

---

[42] *Id.* at 540. *Walker* stressed the *Williams* Court's statement that a prior version of the court rule implementing the statutory 180-day rule—MCR 6.004(D), which, among other things, required the prosecutor to "make a good faith effort to bring a criminal charge to trial" within the 180-day period—"was invalid to the extent that it improperly deviated from the statutory language." *Williams*, 475 Mich at 259. Hence the *Walker* Court concluded that *Williams* rejected a good-faith exception.

[43] *People v Walker*, 480 Mich 1059 (2008).

[44] *Davis*, 283 Mich App at 743. *Williams* primarily overruled *People v Smith*, 438 Mich 715; 475 NW2d 333 (1991), which had held, contrary to the language of MCL 780.131, that the statutory 180-day rule does not apply when the pending charge calls for mandatory consecutive sentencing. *Williams*, 475 Mich at 248. *Williams* also overruled *People v Hill*, 402 Mich 272; 262 NW2d 641 (1978), to the extent *Hill* wrongly established that the 180-day period begins when the prosecutor knows, or when the DOC knows or has reason to know, that a person with charges pending against him is a prison inmate; this conclusion was clearly incorrect given that MCL 780.131 unambiguously provides that the 180-period is triggered when the DOC sends notice to the prosecutor. *Williams*, 475 Mich at 259. Significantly, it was in overruling *Hill* that the *Williams* Court approved the 2006 amendment to MCR 6.004(D), which deleted the sections of the rule that had codified *Hill*, former MCR 6.004(D)(1)(a) and (b), and entirely rewrote

21

Accordingly, as the Court of Appeals correctly held in *Davis*, *Williams* did not affect the general rule from *Hendershot* that dismissal is required under MCL 780.133 only if the prosecutor failed to take good-faith steps to commence action within 180 days of receiving notice from the DOC of an offender's imprisonment. But, as we have explained, good-faith action by the prosecutor does not create an extrastatutory *exception* to the 180-day rule. Rather, a good-faith intent to ready the case for trial describes an implicit *component* of the steps that must be taken within the 180-day period in order for the rule to be satisfied although a trial is not completed within that period. Good-faith action is invoked specifically in contrast to action that, although it takes place within 180 days, consists merely of preliminary steps that are later followed by inexcusable delay and the lack of a genuine intent to proceed to trial. Thus, the good-faith aspect of the 180-day rule *protects defendants* by making clear that merely *any* action by the prosecutor, without regard to whether the action is genuinely designed to promptly bring the case to trial, does not automatically satisfy the rule's intent as expressed by its plain terms; good-faith action does *not* create an *exception* benefitting the *prosecutor*.

## C. THE JURISDICTIONAL ASPECT OF THE 180-DAY RULE

Finally, we address defendant's argument that MCL 780.131 and MCL 780.133 create a strict jurisdictional rule requiring dismissal with prejudice 180 days after delivery

---

subrule (D) to track the language of MCL 780.131 and MCL 780.133. When *Williams* stated that the prior version of MCR 6.004(D) "was invalid to the extent that it improperly deviated from the statutory language," 475 Mich at 259, it was not considering that MCR 6.004(D)(1) also no longer stated that the prosecutor "must make a good faith effort to bring a criminal charge to trial" within the 180-day period, as had the prior version.

of the DOC's notice unless a defendant requires a delay to vindicate his constitutional rights. This argument fails, first and foremost, because it depends on defendant's claim that the 180-day rule is violated if a trial does not take place within the 180-day period. As we have explained, such a conclusion runs directly contrary to the plain language of MCL 780.133, which deprives the court of jurisdiction only if "action is not commenced" within the 180-day period; the jurisdictional aspect of the rule does not hinge on whether the *trial* has begun or has been completed within the period. Whether action has been commenced remains governed by the analysis of this question in *Hendershot.* In concluding that *Hendershot* is no longer good law on this subject, defendant relies primarily on statements in *Williams* that he nonetheless admits are dicta. The *Williams* Court stated, for example, that the 180-day rule "provides that a prison inmate who has a pending criminal charge *must be tried* within 180 days" after the DOC delivers notice and "requires dismissal with prejudice if a prisoner *is not brought to trial* within the 180-day time limit . . . ."[45] As discussed earlier, this element of the rule was not before the *Williams* Court and the statements were, indeed, nonbinding obiter dicta.[46] The *Williams* opinion was not intended to make—nor did it make—pronouncements concerning what constitutes commencing action for purposes of the 180-day rule.

---

[45] *Williams*, 475 Mich at 247, 252 (emphasis added).

[46] Obiter dicta, or "dicta," are not binding precedent. Rather, they are statements that are not essential to determination of the case at hand and, therefore, "lack the force of an adjudication." *Wold Architects & Engineers v Strat*, 474 Mich 223, 232 n 3; 713 NW2d 750 (2006) (citations and quotation marks omitted).

23

Second, defendant's argument implicitly presumes that MCL 780.133 deprives the court of *subject matter* jurisdiction when the 180-day rule is violated. Subject matter jurisdiction "concerns a court's 'abstract *power* to try a case of the kind or character of the one pending' *and is not dependent on the particular facts of the case.*"[47] Because it concerns the court's power to hear a case, it is not subject to waiver.[48] But the court's jurisdiction over a particular person is another matter; a party may stipulate to, waive, or implicitly consent to *personal* jurisdiction.[49] The circuit court here had subject matter jurisdiction over the home invasion charge; Michigan circuit courts are courts of general jurisdiction and unquestionably have jurisdiction over felony cases.[50] Because the

---

[47] *Travelers Ins Co v Detroit Edison Co*, 465 Mich 185, 204; 631 NW2d 733 (2001), quoting *Campbell v St John Hosp*, 434 Mich 608, 613-614; 455 NW2d 695 (1990) (emphasis in *Travelers*).

[48] *Travelers*, 465 Mich at 204.

[49] *Burger King Corp v Rudzewicz*, 471 US 462, 473 n 14; 105 S Ct 2174; 85 L Ed 2d 528 (1985) ("[B]ecause the personal jurisdiction requirement is a waivable right, there are a variety of legal arrangements by which a litigant may give express or implied consent to the personal jurisdiction of the court.") (citations and quotation marks omitted); *People v Phillips*, 383 Mich 464, 470; 175 NW2d 740 (1970) ("[N]o reason appears why an accused could not subject himself to the court's personal jurisdiction. The procedural safeguards spelling out the method whereby a court obtains jurisdiction over the person of an accused are all designed for his protection. If he elects not to avail himself of the established procedural rights there appears to be none who should be heard to complain."); see also *People v Eaton*, 184 Mich App 649, 652-653; 459 NW2d 86 (1990) (discussing the 180-day rule and helpfully summarizing: "Jurisdiction involves the two different concepts of subject-matter jurisdiction and personal jurisdiction. Subject-matter jurisdiction encompasses those matters upon which the court has power to act. Personal jurisdiction deals with the authority of the court to bind the parties to the action. Subject-matter jurisdiction is never waivable nor may it be stipulated to by the parties. Personal jurisdiction, however, is always waivable and defects may be corrected by stipulation.").

[50] Const 1963, art 6, §§ 1 and 13; MCL 600.151; MCL 600.601; MCL 767.1.

jurisdictional aspect of the 180-day rule, MCL 780.133, requires dismissal of a particular defendant in a particular case when the rule is violated, however, the rule governs *personal* jurisdiction and thus is waivable.

Justice BOYLE reached this very result following a well-reasoned analysis in her concurring opinion in *People v Smith*[51] when she concluded that a violation of the 180-day rule is waived by an unconditional guilty plea. Observing that the term "jurisdiction" is "susceptible of various meanings within the realm of criminal procedure," she opined that the term as employed in MCL 780.133 "cannot be said to unambiguously refer to the power of the court to entertain a class of cases, i.e., subject-matter jurisdiction."[52] "Rather, the statute represents a limitation on the power to prosecute in specified circumstances, viz., where an existing warrant, information or charge against a prisoner is not disposed of in a timely manner as provided in MCL 780.131."[53] Because "the statute decrees that a court loses its power over a *particular* matter in specified circumstances," personal jurisdiction—which "deals with the authority of the court over particular persons"—is at issue; and it is "a fundamental principle that defects in personal jurisdiction may be waived . . . ."[54] We adopt Justice BOYLE's analysis on these points.

---

[51] *Smith*, 438 Mich at 719-729 (BOYLE, J., concurring), overruled on other grounds by *Williams*, 475 Mich 245.

[52] *Smith*, 438 Mich at 724, 725 (BOYLE, J., concurring).

[53] *Id.* at 725.

[54] *Id.* at 724-725. The Court of Appeals reached the same conclusion in *Eaton*, 184 Mich App 649. The Prosecuting Attorneys Association of Michigan as amicus curiae also helpfully describe the jurisdictional aspect of the 180-day rule as an "inflexible claim-processing rule." Such rules have been distinguished from rules affecting subject matter jurisdiction by the United States Supreme Court. That Court has observed that the word

Our conclusion that a violation of the statutory 180-day rule does not deprive the court of subject matter jurisdiction is significant because it further defeats defendant's argument that if the 180-day period is exceeded for a reason other than vindication of a defendant's constitutional rights, the court is forever deprived of the power to hear the case. To the contrary, because subject matter jurisdiction is not at issue, a defendant may forfeit the rule requiring commencement of action within 180 days by requesting or consenting to delays, as defendant did many times throughout the proceedings in this case. Our conclusion also reinforces the text of the statute, which clearly conveys that the 180-day period does not describe an automatic cut-off point when the court loses jurisdiction, no matter what events have transpired in the meantime, unless the defendant sought a continuance to protect a constitutional right. Rather, as long as good-faith action was commenced within the 180-day period in order to ready the case for trial, the trial court is not deprived of jurisdiction although the trial itself is not commenced or completed within the period.

---

"jurisdiction" is one "of many, too many, meanings" that is "more than occasionally" used not in a strict sense, but to "describe emphatic time prescriptions in rules of court." *Kontrick v Ryan*, 540 US 443, 454; 124 S Ct 906; 157 L Ed 2d 867 (2004) (citation and quotation marks omitted). Noting a "critical difference between a rule governing subject-matter jurisdiction and an inflexible claim-processing rule," the Court stressed that a claim-processing rule can be forfeited by the parties, whereas, "[c]haracteristically, a court's subject-matter jurisdiction cannot be expanded to account for the parties' litigation conduct; a claim-processing rule, on the other hand, even if unalterable on a party's application, can nonetheless be forfeited if the party asserting the rule waits too long to raise the point." *Id.* at 456.

## IV. RESPONSE TO THE DISSENT

The dissent premises its discussion on its conclusion that, "[e]ven though the [180-day] rule does not expressly require a day count and assignment of responsibility for periods of delay, both requirements are implicit in the statute." We reject this premise because it is based not on the explicit text of the statute, but on judicially created "implicit" requirements. The statutory text could not be clearer. The relevant time limit—"within 180 days after" the DOC delivers the required notice, MCL 780.131(1)—describes a single term of 180 consecutive days following the DOC's delivery of the notice. It does not describe a judicially calculated total period of delay attributable to the prosecutor or the court.

Further, defendants are not prejudiced by this statute, as the dissent fears. A defendant may agree to delay proceedings in the case at will; *he* is not prejudiced by the fixed 180-day period. Rather, the statute places the burden on the *state*; only the prosecutor is bound and must commence action—and remain ready to proceed to trial—within 180 days. Although a defendant may consent to delay the proceedings, the prosecutor must remain ready to proceed to trial—and to avoid *inexcusable* delay—when the agreed upon period of delay expires.[55]

---

[55] Moreover, we do not hold that inexcusable docket congestion or other causes of delay not directly attributable to the prosecutor are irrelevant to the inquiry. Rather, as discussed, the docket congestion here was explained and excusable. The court was ready to proceed on September 19, 2006, when defendant moved to adjourn. Defendant did not object—and often directly consented—to the later adjournments, and the court considered whether defendant would be prejudiced by the further delays.

The dissent's fears of prejudice to the defendant arise, moreover, primarily from its incorrect assertion that the *trial* must begin or be completed within 180 days. But a defendant is *only* prejudiced by the inability to raise pretrial constitutional issues or prepare for trial if the prosecutor is forced to commence *trial*—as opposed merely to commencing *action*—within 180 days, as the dissent suggests. The dissent wrongly focuses on MCL 780.131(1), which refers to a defendant's being "brought to trial." But MCL 780.133, not MCL 780.131, governs when jurisdiction is lost as the result of a violation of the 180-day rule. We underscore the Legislature's choice of a broader word in MCL 780.133, which does *not* refer to the commencement of "trial," but refers to commencement of "action" on the matter.

Finally, for these reasons, our historical precedent in *Hendershot* is consistent with the plain statutory language. Accordingly, *Hendershot* was not wrongly decided and should not be overruled.

## V. CONCLUSION

The statutory 180-day rule, MCL 780.131 and MCL 780.133, may be invoked to require dismissal of a criminal case only if action is not commenced in the case within 180 days after the prosecutor receives the required notice from the DOC. The rule does not deprive the court of its power to hear the case simply because the *trial* has not commenced within that period, let alone because the trial has not been completed. Rather, as this Court has held for more than 50 years, the rule requires the prosecutor to proceed promptly within 180 days to move the case to the point of readiness for trial. As long as the prosecutor does so, dismissal is not required under MCL 780.133 unless, after

28

some preliminary step in the case occurs, that initial action is followed by inexcusable delay beyond the 180-day period and an evident intent not to bring the case to trial promptly. Under such circumstances, the court may conclude that action was not in fact meaningfully or genuinely commenced as required by MCL 780.133; put otherwise, the court may conclude that action was not commenced in good faith. But good-faith action should not be viewed as an *exception* to the rule; in this context, the requirement that a prosecutor proceed in "good faith" means simply that he must in fact commence action and cannot satisfy the rule by taking preliminary steps without an ongoing, genuine intent to promptly proceed to trial, as might be evident from subsequent inexcusable delays. Finally, the 180-day period is a fixed period of consecutive days; a court should not calculate the period by allocating only the number of days' delay attributable to the prosecutor, although the reasons underlying specific periods of delay might be otherwise relevant to a court's determination of whether action was in good faith commenced during the requisite period.

In this case, the prosecution commenced action to bring defendant to trial well within the 180-day period, was actually ready to proceed to trial during this period, and remained ready to proceed with the trial at all times thereafter. Further, the record reflects no evidence of subsequent inexcusable delays under the facts of this case. Indeed, defendant requested or consented to most of the adjournments. Therefore, the trial court was not deprived of personal jurisdiction for the purpose of adjudicating the home invasion charge against defendant.

Accordingly, we affirm the result reached by both lower courts and the judgment of the Court of Appeals.

Maura D. Corrigan
Robert P. Young, Jr.
Stephen J. Markman
Diane M. Hathaway

STATE OF MICHIGAN

SUPREME COURT

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v                                                          No. 139969

DONALD ALLEN LOWN,

        Defendant-Appellant.
_____

MARILYN KELLY, J. (*dissenting*).

I would reverse the judgment of the Court of Appeals. I believe that compliance with the 180-day rule established by MCL 780.131 and MCL 780.133 requires more than a prosecuting attorney's good-faith effort to promptly bring an inmate to trial. I would hold that the statutory rule requires an inmate actually to be brought to trial within 180 days.

JURISDICTION UNDER THE 180-DAY RULE

I agree with the majority that the 180-day rule is jurisdictional. This is clear from the language of MCL 780.133, which states:

> In the event that, within the time limitation set forth in [MCL 780.131], action is not commenced on the matter for which request for disposition was made, *no court of this state shall any longer have jurisdiction thereof* . . . . [Emphasis added.]

Thus, if "action is not commenced" within 180 days, as set forth in MCL 780.131, the court is divested of jurisdiction.

I further agree with the majority that MCL 780.133 presents an issue of personal, rather than subject-matter, jurisdiction. Therefore, I concur in the majority's adoption of Justice BOYLE's analysis on this issue.[1] Notably, if the 180-day rule concerned subject-matter jurisdiction, noncompliance with the rule would not be waivable.[2] Yet it must be waivable, at least when a defendant asserts certain constitutional rights. Were the statute viewed as preventing defense-initiated adjournments, the constitutional rights of the defendant might well be violated.

Therefore, interpreting the 180-day rule as referring to subject-matter jurisdiction would potentially render the entire statute unconstitutional. And it is a fundamental rule of statutory interpretation that if two constructions are possible, one constitutional and one unconstitutional, the constitutional construction should be adopted.[3] It follows that the 180-day rule is jurisdictional only with regard to personal jurisdiction, which is waivable by a defendant.

I agree with the majority that the 180-day rule divests a court of personal jurisdiction over a defendant if "action is not commenced" within 180 days of the required notice from the Department of Corrections (DOC). My disagreement regards

---

[1] *People v Smith*, 438 Mich 715, 724-725; 475 NW2d 333 (1991) (BOYLE, J., concurring in the result), overruled on other grounds by *People v Williams*, 475 Mich 245; 716 NW2d 208 (2006).

[2] See *United States v Cotton*, 535 US 625, 630; 122 S Ct 1781; 152 L Ed 2d 860 (2002) (stating that subject matter jurisdiction "can never be forfeited or waived").

[3] *Ford Motor Co v State Tax Comm*, 400 Mich 499, 518; 255 NW2d 608 (1977) (WILLIAMS, J., dissenting), citing *State Bar of Mich v City of Lansing*, 361 Mich 185, 195; 105 NW2d 131 (1960).

three matters: (a) the calculation of the 180 days, (b) the type of "action" that must be commenced within the statutory time limit, and (c) the precedential effect of *People v Hendershot*.[4] I address each of these in turn.

CONSTRUING AND ATTRIBUTING DELAY UNDER THE 180-DAY RULE

The majority claims that, in calculating the 180-day period, identifying the source of periods of pretrial delay is not necessary. It believes that such a practice was imported improperly into 180-day-rule jurisprudence from caselaw dealing with the constitutional right to a speedy trial. I disagree the importation was improper. It is true that, when determining whether a defendant's constitutional right to a speedy trial has been violated, the "reason for the delay" is one of the factors taken into account.[5] However, the allocation of pretrial delay is a necessary corollary of the 180-day rule, as well. Even though the rule does not expressly require a day count and assignment of responsibility for periods of delay, both requirements are implicit in the statute.

MCL 780.131 specifically states the number of days that may pass between the time the DOC certifies notice and the time the defendant must be brought to trial. The specification in the statute of a set number of days implies that a day count is necessary. Furthermore, one must ascribe responsibility for the periods of delay in order to determine which the defendant caused, and thus waived.

---

[4] *People v Hendershot*, 357 Mich 300; 98 NW2d 568 (1959).

[5] Four factors to be balanced when determining whether a defendant's constitutional right to a speedy trial has been violated are: the "'[l]ength of delay, the reason for the delay, the defendant's assertion of his right and prejudice to the defendant.'" *People v Collins*, 388 Mich 680, 687-688; 202 NW2d 769 (1972), quoting *Barker v Wingo*, 407 US 514, 530; 92 S Ct 2182; 33 L Ed 2d 101 (1972).

3

A violation of the 180-day rule divests a court of personal jurisdiction. Significantly, only a defendant may waive application of the rule. A prosecutor's good-faith efforts to prepare for trial or even a trial court's order to adjourn trial may not waive it. Thus, when it comes to attributing pretrial delay, the majority is correct that it is unnecessary to attribute delay to the prosecutor. The more pertinent inquiry is whether a period of delay may be attributed to and then waived by the defendant.

When a defendant requests an adjournment, the delay occasioned by the adjournment should be attributed to the defendant and not considered when calculating the 180 days that the statute allots. This is because, in requesting an adjournment, a defendant is effectively waiving that period of delay. But by requesting or consenting to a delay, a defendant is not forfeiting the rule requiring action to commence within 180 days; he or she is not forever relinquishing the totality of his or her rights under the 180-day rule. This would have the undesirable effect of permitting a court or prosecutor to delay for an indefinite amount of time after a defendant knowingly requests an adjournment. Rather, by requesting or consenting to a certain period of delay, a defendant is waiving that specific period of delay. Effectively, a defendant may toll the 180-day period.

Hence, any delay that the court grants and that the defendant consents to must not contribute to the 180 days allotted. This interpretation is necessary because defendants cannot be permitted to deliberately create periods of delay and then use those periods to argue that they were denied their statutory right to a speedy trial. On the other hand, a delay attributable to a person or entity other than a defendant cannot be excepted from the 180-day period. Hence, when a trial is unreasonably delayed for reasons outside a

4

defendant's control, the length of the delay should be counted when calculating whether 180 days have elapsed.  Examples are adjournments requested by the prosecution and those caused by a judge because of docket congestion.  If 180 days of delay not attributable to a defendant transpire and "action" has not yet commenced, the court is divested of jurisdiction to try the charge.

### THE "ACTION" REQUIRED BY THE 180-DAY RULE

In 1959, in the case of *People v Hendershot*, this Court held that MCL 780.131 allowed the 180-day period to be exceeded if "apparent good-faith action is taken well within the period and the people proceed promptly and with dispatch thereafter toward readying the case for trial . . . ."[6]  The majority rallies behind this interpretation of the 180-day rule.  However, the wording of MCL 780.131 and MCL 780.133 does not support it.

> The relevant portion of MCL 780.131 provides:
>
> Whenever the department of corrections receives notice that there is pending in this state any untried warrant, indictment, information, or complaint setting forth against any inmate of a correctional facility of this state a criminal offense for which a prison sentence might be imposed upon conviction, *the inmate shall be brought to trial within 180 days after the department of corrections causes to be delivered to the prosecuting attorney* of the county in which the warrant, indictment, information, or complaint is pending *written notice of the place of imprisonment of the inmate and a request for final disposition of the warrant, indictment, information, or complaint*.  The request shall be accompanied by a statement setting forth the term of commitment under which the prisoner is being held, the time already served, the time remaining to be served on the sentence, the amount of good time or disciplinary credits earned, the time of parole eligibility of the prisoner, and any decisions of the parole board

---

[6] *Hendershot*, 357 Mich at 304.

relating to the prisoner.  The written notice and statement shall be delivered by certified mail.  [Emphasis added.]

Thus, the statute requires that an inmate with pending criminal charges "shall be brought to trial within 180 days after" the DOC delivers written notice of the inmate's imprisonment to the prosecuting attorney.  The use of the word "shall" indicates a mandatory and imperative directive.[7]

The penalty for failure to comply with this statutory mandate is set forth in MCL 780.133:

> In the event that, within the time limitation set forth in [MCL 780.131], *action is not commenced on the matter for which request for disposition was made*, no court of this state shall any longer have jurisdiction thereof, nor shall the untried warrant, indictment, information or complaint be of any further force or effect, and the court shall enter an order dismissing the same with prejudice.  [Emphasis added.]

Thus, if "action is not commenced" within 180 days, as set forth in MCL 780.131, the court is divested of jurisdiction.

Contrary to the majority's approach, I question the need to go beyond the words in the statute and the need to consult a dictionary to discern the Legislature's intended meaning of commencing "action."  MCL 780.131 mandates that the inmate be "brought to trial" within 180 days, and MCL 780.133 divests the court of jurisdiction over the untried warrant, indictment, information, or complaint when "action is not commenced on the matter" within 180 days.  Read together, MCL 780.131 and MCL 780.133 indicate that the "action" to be commenced within 180 days is "trial," not some undefined effort by the prosecutor or some preliminary proceeding leading to trial.  To read the statutes

---

[7] *Oakland Co v State*, 456 Mich 144, 154; 566 NW2d 616 (1997).

6

otherwise would be to contradict the Legislature's mandate in MCL 780.131 that "the inmate shall be brought to trial within 180 days."

As the Court of Appeals has noted, "All questions concerning the 180-day rule begin and end with the statute, the key words of which are 'such inmate shall be brought to trial within 180 days.' Simply, this statute is mandatory and means that an inmate is entitled to a trial within 180 days."[8]

The majority admits that the 180-day rule consists of both MCL 780.131 and MCL 780.133. However, it ignores MCL 780.131 when interpreting the requirements of the rule and the punishment for noncompliance. Instead, relying on *Hendershot*, it holds that the statutes allow the 180-day period to be exceeded if "'apparent good-faith action is taken well within the period and the people proceed promptly and with dispatch thereafter toward readying the case for trial[.]'"[9] But this strained interpretation is far disconnected from the language of the statute.

Not only does the majority's interpretation ignore the clear legislative mandate in MCL 780.131 that an inmate must be brought to trial within 180 days, it effectively adds nonexistent language to the statute. The text of the statute contains no reference to "good faith." The majority claims that good faith is not an "exception" to the 180-day rule. Rather, it asserts that good faith is an implicit requirement that the 180-day rule imposes

---

[8] *People v Wolak*, 153 Mich App 60, 64-65; 395 NW2d 240 (1986).

[9] *Ante* at 12, quoting *Hendershot*, 357 Mich at 304.

7

on the prosecuting attorney; all that is required of the prosecuting attorney under the rule is a good-faith effort to bring the case to trial.

Good-faith efforts on behalf of the prosecution must be categorized as a judicially created exception to the 180-day rule, stemming from *Hendershot*. The 180-day rule requires a trial to begin within 180 days. Anything that allows a trial to be postponed beyond the 180 days allotted is necessarily an exception to the rule. No amount of rationalizing can change the fact that the Legislature wrote in no such exception.

The majority's interpretation is that if "apparent good-faith action is taken well within the period and the people proceed promptly and with dispatch thereafter toward readying the case for trial, the condition of the statute for the court's retention of jurisdiction is met." This interpretation contains a second fundamental flaw: it places the burden of good-faith action solely on the prosecution, not on the trial court. Its practical effect is that the judge could indefinitely postpone trial in defiance of MCL 780.131 and MCL 780.133.

The scheduling of cases is within the sole discretion of the court. The prosecutor does not control it. Even if prosecuting attorneys do everything within their power to bring cases to trial, they cannot force courts to schedule trials within 180 days of notice. A court can delay any trial from commencing, citing docket congestion or other reasons. If this type of delay is not taken into account by the 180-day rule, an inmate could be forced to sit in prison indefinitely awaiting trial.

8

This problem is effectively illustrated by the procedural history of the instant case. The 180-day period relevant to this appeal began on July 23, 2006.[10] On the next scheduled trial date, September 16, 2006, defendant's recently appointed counsel requested an adjournment to allow him to prepare, and defendant agreed. The next scheduled trial date was November 28, 2006. On that date, defendant and counsel were present in court and prepared to proceed to trial. However, the court adjourned the case, and a new trial date of April 24, 2007, was set. There is no explanation in the record for the 147-day delay caused by this adjournment. On April 24, 2007, the court, on its own motion off the record, adjourned defendant's trial an additional 77 days, apparently because of docketing concerns. Next, a new trial date was set for July 11, 2007. On that date, the case was adjourned 56 days to September 5, 2007. The court simply explained: "We've taken the time here to determine when this case is going to be reset and everybody is going to be available."

Thus, from November 28, 2006, to September 5, 2007, the court alone adjourned defendant's trial well in excess of 180 days. Yet the majority concludes that no violation of the 180-day rule occurred.

Under its interpretation and under *Hendershot*, as long as the prosecutor stands ready for trial, the court may adjourn a trial date as many times as it wishes. It need give no explanation for the length of the adjournments. Thus, even if no "action is commenced" for an indefinite time, a court may retain its jurisdiction over the matter, as

---

[10] *Williams*, 475 Mich at 256 n 4 (holding that the 180-day period begins the day after the prosecuting attorney receives the written notice required by MCL 780.131).

9

long as there is some undefined good-faith effort by the prosecutor. This interpretation strips the 180-day requirement of any practical meaning. And it denies many inmates the legal recourse that the Legislature specifically provided them.

## *HENDERSHOT* AND STARE DECISIS

The majority justifies its interpretation of the 180-day rule with the fact that this Court previously sanctioned such an interpretation in *Hendershot*. For the reasons I have described, I believe that *Hendershot* was wrongly decided. If an opinion is wrongly decided, we must apply the doctrine of stare decisis when deciding whether to overrule it. Our analysis always should begin with a presumption that upholding precedent is the preferred course of action.[11] That presumption should prevail unless effectively rebutted by the conclusion that a compelling justification exists to overturn it.[12]

In determining whether a compelling justification exists to overturn precedent, the Court may consider numerous evaluative criteria, none of which, standing alone, is dispositive. These criteria include, but are not limited to, whether (1) the precedent has proved to be intolerable because it defies practical workability, (2) reliance on the precedent is such that overruling it would cause a special hardship and inequity, (3) related principles of law have so far developed since the precedent was pronounced that no more than a remnant of it has survived, (4) facts and circumstances have so changed, or have come to be seen so differently, that the precedent no longer has significant

---

[11] *Petersen v Magna Corp*, 484 Mich 300, 317; 773 NW2d 564 (2009) (opinion by KELLY, C.J.).

[12] *Id.*

10

application or justification, (5) other jurisdictions have decided similar issues in a different manner, (6) upholding the precedent is likely to result in serious detriment prejudicial to public interests, and (7) the prior decision was an abrupt and largely unexplained departure from then-existing precedent.[13]

First, I consider whether *Hendershot* has proved intolerable because it defies practical workability. I believe that this factor weighs strongly in favor of overruling *Hendershot*. Under *Hendershot*, it is unclear what constitutes a sufficient basis for a court to determine that the prosecution has acted in good faith to bring a defendant to trial. Making that determination requires an inherently subjective and effectively standardless inquiry. The answer may vary widely from judge to judge.

What constitutes a good-faith effort in the eyes of one judge may not reach the mark in the eyes of another. For example, if a prosecutor delays trial for 180 days while diligently searching for a witness, is that sufficient good faith for a court to excuse the delay and retain jurisdiction? The answer is unclear. Further compounding the impracticability of *Hendershot* is the question of how a court is to make such a determination from the record. Whether a prosecutor has made good-faith efforts often will not be discernable from the record.

*Hendershot* contorted the 180-day rule into a confusing and ambiguous test. It left unclear what would constitute a prosecutor's good-faith efforts and when, if ever, the prosecutor's efforts would violate the 180-day rule. Ascertaining when a prosecutor

---

[13] *Univ of Mich Regents v Titan Ins Co*, 487 Mich 289, 303-304; __ NW2d __ (2010), citing *Adarand Constructors, Inc v Peña*, 515 US 200, 233-234; 115 S Ct 2097; 132 L Ed 2d 158 (1995).

should have been ready to proceed to trial will often be an insurmountable feat. Accordingly, *Hendershot* is innately unworkable.

Second, I consider whether reliance interests weigh in favor of upholding *Hendershot*. I conclude that this factor slightly favors upholding *Hendershot*. The Court decided that case more than 50 years ago, and there has been reliance on its holding. However, the reliance has been limited. Even after the *Hendershot* decision, Michigan courts have interpreted MCL 780.133 inconsistently, causing confusion about what must be done to prevent a court from losing jurisdiction over the defendant on the untried charge. For example, the Court of Appeals has held that the language of the 180-day rule requires an inmate to be brought to trial within 180 days.[14] Language from this Court has further compounded the confusion.[15]

Given that the caselaw on this issue is conflicting, a careful prosecutor or trial judge would not unconditionally rely on *Hendershot* as foolproof justification for delay in commencing a trial. Furthermore, MCL 780.131 unequivocally states that an inmate "shall be brought to trial within 180 days."

Third, I consider whether related principles of law have developed since *Hendershot* was decided that have undermined its authority. As I pointed out, both this Court and the Court of Appeals have held that the 180-day rule requires an inmate to be

---

[14] *Wolak*, 153 Mich App at 64 ("All questions concerning the 180-day rule begin and end with the statute, the key words of which are 'such inmate shall be brought to trial within 180 days.' Simply, this statute is mandatory and means that an inmate is entitled to a trial within 180 days.").

[15] See *Williams*, 475 Mich at 252 ("MCL 780.133 requires dismissal with prejudice if a prisoner is not brought to trial within the 180-day time limit set forth in the act.").

brought to trial within 180 days notwithstanding *Hendershot*.[16]  Thus, subsequent

caselaw has chipped away at the holding in *Hendershot*, undermining its authority.

Fourth, I consider whether facts and circumstances have so changed or have come

to be seen so differently that *Hendershot* has been robbed of significant justification.  I

discern no factual or circumstantial changes that weigh for or against overruling

*Hendershot*.  Therefore, this factor is inapplicable to my analysis.

Fifth, I consider whether other jurisdictions have decided similar issues in a

different manner.  This factor also is inapplicable to my stare decisis analysis.  Although

other jurisdictions have statutorily supplemented the constitutional right to a speedy trial,

the unique language of MCL 780.131 and MCL 780.133 renders other jurisdictions'

interpretations of similar statutes unhelpful to our analysis.

Sixth, I consider whether upholding *Hendershot* is likely to result in serious

detriment prejudicial to public interests.  This factor weighs in favor of overruling

*Hendershot*.  It is in the public interest to see that those accused of crimes are timely

brought to trial.  It is also in the public interest that both the United States Constitution

and the Michigan Constitution be upheld.  And both guarantee the right to a speedy

trial.[17]  Accordingly, the Legislature has statutorily guaranteed an inmate's right to a

speedy trial.

Moreover, the 180-day rule furthers the public interest by ensuring that sentences

run concurrently when appropriate.  "'The purpose of the [180-day rule] is clear.  It was

---

[16] *Wolak*, 153 Mich App at 64; *Williams*, 475 Mich at 252.

[17] US Const, Am VI; Const 1963, art 1, § 20.

13

intended to give the inmate, who had pending offenses not yet tried, an opportunity to have the sentences run concurrently consistent with the principle of law disfavoring accumulations of sentences.'"[18]

Despite the public's interest in seeing criminal charges disposed of in a timely manner, *Hendershot*'s holding permits criminal charges to remain untried for an indeterminate time. While ostensibly protecting an inmate's statutory right to a speedy trial, it leaves MCL 780.131 devoid of effect in many cases. Thus, *Hendershot* is detrimental to the public interests addressed by the 180-day rule.

Finally, I consider whether *Hendershot* represented an abrupt and largely unexplained departure from then-existing precedent. This factor is inapplicable to my stare decisis analysis because *Hendershot* was the first case to decide the issue. Thus, no precedent existed from which *Hendershot* could depart.

In summary, *Hendershot* (1) was wrongly decided, (2) defies practical workability, (3) has been undermined by subsequent caselaw, (4) would not cause a special hardship or inequity if overruled, and (5) has resulted in serious detriment prejudicial to public interests. Accordingly, I conclude that a compelling justification exists for overruling *Hendershot*.

CONCLUSION

The majority concludes that the 180-day rule is not violated if the prosecution takes some initial action to bring a defendant to trial, unless the action is followed by

---

[18] *Williams*, 475 Mich at 252, quoting and overruling on other grounds *People v Loney*, 12 Mich App 288, 292; 162 NW2d 832 (1968).

"inexcusable delay beyond the 180-day period and an evident intent not to bring the case to trial promptly." The flaws in this interpretation are breathtaking. First, the interpretation ignores the clear language of MCL 780.131 that requires an inmate to be brought to trial within 180 days. Second, it imports language into MCL 780.133 that the Legislature never put there by giving a convoluted definition to the word "action." Third, it allows the trial judge to indefinitely delay a trial by citing docket congestion or other reasons.

The majority relies for its interpretation of the 180-day rule on the holding in *Hendershot*. However, *Hendershot* was wrongly decided, and compelling reasons exist to overturn it. I would overrule *Hendershot* and hold that the statutory 180-day rule requires that trial be commenced within 180 days of notice to the prosecution, excluding periods of delay that a defendant waived. Such a construction is faithful to the statutory language because it gives effect to the mandate of MCL 780.131 that an inmate be brought to trial within 180 days. In light of my analysis, I would reverse the Court of Appeals' judgment.

Marilyn Kelly
Michael F. Cavanagh

MARY BETH KELLY, J. I do not participate in the decision of this case, which the Court considered before I assumed office, in order to avoid unnecessary delay to the parties. MCR 2.003(B) and (D)(3)(b).