*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

UNPUBLISHED
August 17, 2023

Plaintiff-Appellee,

v

No. 362638
Oakland Circuit Court
LC No. 2021-278420-FC

DAWAYNE ROLIN WALKER,

Defendant-Appellant.

Before: BOONSTRA, P.J., and LETICA and FEENEY, JJ.

PER CURIAM.

Defendant appeals as of right his jury trial conviction of carjacking, MCL 750.529a. He was sentenced as a fourth-offense habitual offender, MCL 769.12, to 35 to 75 years' imprisonment. We affirm.

## I. BASIC FACTS AND PROCEDURAL HISTORY

Defendant's conviction arises from a carjacking that occurred in Southfield, Michigan. On September 21, 2020, the victim and her friend, TT, were at a park. The victim ordered Chinese food from a restaurant located in a store plaza near Eight Mile and Evergreen Roads, and the friends drove in separate vehicles to that location. The victim noticed two men walking near their vehicles. The victim retrieved her food and entered her 2013 Ford Fusion. The victim ate her food with her driver's door open. She sat with her passenger window down and spoke to TT who was parked in the adjacent parking spot. TT also noticed the two men walking behind and then in front of their vehicles. TT testified that one man was wearing a gray sweatshirt with black jeans and the other wore a periwinkle jacket with black jeans. Both men were wearing masks. TT asked the victim if she was ready to leave, but the victim decided to stay there and continue eating her food. TT drove away to retrieve a pizza order.

-1-

The victim testified that she felt comfortable remaining at the store plaza because there were other people present. As the victim sat in her car and ate, a man entered the passenger side of the car and grabbed her purse. The victim reached for her cell phone and put it under her armpit. Defendant approached the driver's side of the victim's car, pointed a gun at her, and stated: "Bitch, you're getting robbed." Defendant repeatedly struck the victim in the face with the butt of his gun before pulling her out of the car and driving away.

Approximately two minutes after leaving the plaza, TT received a phone call from the victim. The victim seemed terrified and scared as she screamed that she had been hit "upside" the head with a gun and that her car and everything had been taken. TT immediately drove back to the restaurant where the victim was present with injuries, including a knot, to her head and face. Both Detroit and Southfield police officers responded to the scene. The victim's car was recovered minutes later, approximately one-half mile from the carjacking scene. A homeowner's surveillance camera recorded the victim's vehicle crashing into a car parked on the street, and two occupants fleeing the vehicle.

Law enforcement later recovered fingerprint and deoxyribonucleic acid (DNA) evidence from the victim's vehicle. Although the fingerprint evidence did not lead to a suspect, DNA associated with defendant was found on the stolen vehicle's steering wheel and gear shift. Because of the DNA evidence, the police showed a photograph of defendant to the victim, but she did not identify him as her assailant. Additionally, the victim admitted that she did not provide a description of the carjackers to the police after the incident. The victim subsequently identified defendant at the preliminary examination and at trial, stressing that she could identify defendant as the gunman because of his eyes.

During trial, the victim acknowledged that her Ford Fusion was her first car, and she tried to take care of it. The victim testified that she took her vehicle to a car wash and for oil changes, but she denied getting out of her car when she had it serviced. Rather, she remained inside her car during the car washes, and the only interior portion of the vehicle touched during the oil change by a service technician was the hood release button.

Defendant testified he worked at three local car wash and oil change businesses that also vacuumed and cleaned the interior of vehicles. Defendant proffered that his DNA evidence must have been left inside the victim's vehicle when he serviced it. But, he did not have documentary evidence of his employment at those businesses because he was paid in cash and he did not present testimony from his supervisors or coworkers to verify his employment. Although defendant challenged the victim's identification testimony as unreliable and presented a theory of misidentification, the jury convicted him as charged.

## II. SUFFICIENCY OF THE EVIDENCE

Defendant first alleges that the prosecution failed to present sufficient evidence to establish his identity as the person who carjacked the victim to support his conviction. We disagree.

We review de novo a challenge to the sufficiency of the evidence. *People v Bailey*, 310 Mich App 703, 713; 873 NW2d 855 (2015). When ascertaining whether sufficient evidence was presented at trial to support a conviction, this Court must view the evidence in a light most favorable to the prosecution and determine whether a rational tier of fact could find that the essential elements of the crime were proven beyond a reasonable doubt. *People v Miller*, 326 Mich App 719, 735; 929 NW2d 821 (2019). "[A] reviewing court is required to draw all reasonable inferences and make credibility choices in support of the jury verdict." *People v Nowack*, 462 Mich 392, 400; 614 NW2d 78 (2000).

Defendant does not challenge any of the specific elements of carjacking, but only contends that the prosecution failed to present sufficient evidence to establish his identity as the carjacker. Identity is an essential element in a criminal prosecution. *People v Oliphant*, 399 Mich 472, 489; 250 NW2d 443 (1976); *People v Fairey*, 325 Mich App 645, 649; 928 NW2d 705 (2018). The prosecution must prove the identity of the defendant as the perpetrator of a charged offense beyond a reasonable doubt. *People v Kern*, 6 Mich App 406, 409-410; 149 NW2d 216 (1967). Positive identification by a witness or circumstantial evidence and reasonable inferences arising from it may be sufficient to support a conviction of a crime. *People v Davis*, 241 Mich App 697, 700; 617 NW2d 381 (2000); see also *Nowack*, 462 Mich at 400. The credibility of identification testimony is for the trier of fact to resolve, and this Court will not resolve it anew. *Davis*, 241 Mich App at 700.

The victim acknowledged that she did not provide a description of the carjacker after the event, citing the speed of its occurrence, the mask, and her fear. At trial, however, the victim identified defendant as the carjacker.[1] She explained that she saw part of the carjacker's face, particularly his eyes, when he walked past her car before the incident, when they were face-to-face as he pulled her from the car, and when he backed up her car and drove away. The victim testified that she would never forget defendant because of his eyes. This evidence, if believed, was sufficient to establish defendant's identity as the perpetrator beyond a reasonable doubt. *Davis*, 241 Mich App at 700. In addition to the victim's identification testimony, the prosecution also presented evidence that DNA associated with defendant was found on the steering wheel and the gear shift inside the victim's car. This DNA evidence placed defendant inside the victim's car, and it correlated to locations that defendant would have touched as the driver of the vehicle, thereby buttressing the reliability of the victim's identification testimony. Accordingly, viewed in a light most favorable to the prosecution, the evidence was sufficient to establish defendant's identity as the carjacker beyond a reasonable doubt.

Nonetheless, defendant submits that the victim's identification testimony was unreliable because she failed to identify him when shown his photograph. Furthermore, the victim only

---

[1] The passenger that entered the victim's car and grabbed her purse remained unknown.

identified him several months later at the preliminary examination when he wore a jail uniform and sat with defense counsel. Defendant also offered his plausible explanation for why his DNA was in the victim's car, which the jury should have believed. But a jury may choose to believe or disbelieve all or part of the witness's testimony. *People v Baskerville*, 333 Mich App 276, 283-284; 963 NW2d 620 (2020). And, the credibility of a witness presents a matter of weight, not sufficiency. *Id*. at 283. Although defendant testified that he probably left his DNA in the victim's car when he cleaned it, the victim rejected that assertion, testifying that she did not leave her vehicle when she went through the car wash. The victim further testified that she even remained in her vehicle during oil changes, and the service technician only would have touched the hood release button in her vehicle's interior, a location not near the steering wheel or gear shift.

Defendant's challenges to the victim's identification and his explanation for the presence of his DNA in the victim's car were presented to the jury during trial and are raised on appeal. Indeed, the victim was questioned on both direct and cross-examination about her inability to recognize defendant from a photograph, that she reported to the police that the incident happened quickly and that the carjacker was masked, and that she first identified defendant at the preliminary examination when he was wearing an orange jail uniform. However, any doubt or discrepancy pertaining to the credibility of a witness's testimony presented a jury determination. *Id*. Even if a witness's identification of the defendant is less than positive, the question remains one for the trier of fact. *People v Abernathy*, 39 Mich App 5, 7; 197 NW2d 106 (1972). Applying these principles, there was sufficient evidence to enable the trier of fact to find beyond a reasonable doubt that defendant was the carjacker who struck the victim and drove her car away.

## III. DEFENDANT'S STANDARD 4 BRIEF

Defendant raises additional issues in a pro se supplemental brief filed pursuant to Supreme Court Administrative Order No. 2004-6, Standard 4. After review, we conclude that none have merit.

### A. SUFFICIENCY OF THE EVIDENCE

Defendant himself asserts that the evidence was insufficient to support his conviction because he provided a plausible explanation for why his DNA would be present inside the victim's car. As explained in Section II, sufficient evidence supports defendant's conviction. The victim refuted defendant's explanation for the presence of his DNA by denying that she ever got out of her car when she took it to the car wash or had the oil changed. The competing testimony created an issue of fact for the jury to resolve, and we are required to "make credibility choices in support of the jury verdict." *Nowak*, 462 Mich at 400.

### B. PROSECUTOR'S CONDUCT

Defendant contends that reversal is required because the prosecutor knowingly presented false testimony at trial. We disagree.

Because defendant did not object to the prosecutor's conduct, or otherwise raise this issue in the trial court, this claim of misconduct is unpreserved. See *People v Bennett*, 290 Mich App 465, 475; 802 NW2d 627 (2010). Unpreserved claims of prosecutorial misconduct are reviewed

for plain error affecting defendant's substantial rights. *People v Brown*, 294 Mich App 377, 382; 811 NW2d 531 (2011).

A prosecutor may not knowingly use false testimony to obtain a conviction. *People v Smith*, 498 Mich 466, 475-476; 870 NW2d 299 (2015). "[A] conviction obtained through the knowing use of perjured testimony offends a defendant's due-process protections guaranteed under the Fourteenth Amendment." *People v Aceval*, 282 Mich App 379, 389; 764 NW2d 285 (2009). Perjury is defined as "a willfully false statement regarding any matter or thing, if an oath is authorized or required." *People v Lively*, 470 Mich 248, 253; 680 NW2d 878 (2004) (emphasis deleted). To prove prosecutorial misconduct premised on perjury, a defendant must demonstrate: (1) that a witness knowingly made a false statement, and (2) the prosecutor knowingly elicited the false statement. *People v Loew*, 340 Mich App 100, 128; 985 NW2d 255 (2022), lv gtd. Where a defendant simply surmised that the prosecutor had information to directly contradict the testimony of its most important witness, a claim of prosecutorial misconduct premised on suborned perjury was not established. *Id*. at 128-129. Generally, a conviction for perjury committed during trial testimony cannot be sustained only with contradictory sworn statements by the defendant. See *People v Kennedy*, 221 Mich 1, 3-4; 190 NW 749 (1922).

Defendant submits that the victim's preliminary examination and trial testimony differed from her statements to the police, which exposed her inconsistent descriptions of the carjacker and established that she did not get a good look at him. Additionally, the responding officer did not record that the victim stated that she could identify the gunman by his eyes. However, these examples of potential inconsistencies fail to demonstrate that the prosecutor knowingly presented false testimony at trial, or, more significantly, show that the prosecutor knowingly presented or allowed false testimony to stand uncorrected. Rather, the prosecutor made no attempt to conceal the inconsistencies in the victim's statements and testimony. Indeed, defense counsel cross-examined the victim regarding the inconsistencies and, in closing argument, asserted that a not guilty verdict was warranted under the circumstances. Thus, the jury was aware of the alleged inconsistencies and was permitted to consider them when evaluating the victim's credibility. Merely because the victim's testimony may have been inconsistent with a prior statement or conflicted with other witnesses' testimony does not establish that her testimony was in fact false. See *People v Bass*, 317 Mich App 241, 275; 893 NW2d 140 (2016) ("Although an inconsistent prior statement may be a mechanism to impeach a witnesses' credibility at trial, it is not definitive evidence that the trial testimony is false."). Rather, the inconsistencies created questions of fact for the jury to resolve. Accordingly, defendant has failed to demonstrate plain error.

## C. UNDULY SUGGESTIVE IDENTIFICATION PROCEDURE

In his last issue raised as a statement of questions presented, defendant proffers that the victim's in-court identification testimony was inadmissible because it was tainted by an unduly suggestive pretrial identification procedure in which the police showed her a single photograph of defendant. We disagree.

Because defendant did not object to the victim's in-court identification or otherwise raise any issue concerning the pretrial procedure, this issue is unpreserved. *People v McCray*, 245 Mich App 631, 638-639; 630 NW2d 633 (2001). Therefore, we review this issue for plain error affecting defendant's substantial rights. *People v Carines*, 460 Mich 750, 752-753, 763-764; 597 NW2d 130 (1999).

Photographic identification procedures can violate a defendant's due-process rights if they are so impermissibly suggestive as to give rise to a substantial likelihood that there will be a misidentification. *People v Gray*, 457 Mich 107, 111; 577 NW2d 92 (1998). An improper suggestion may arise when a witness is shown a photograph of only one person because the witness is tempted to presume that the photograph is of the assailant. *Id.* "Showing a witness a single photograph is considered to be one of the most suggestive photographic identification procedures." *People v Woolfolk*, 304 Mich App 450, 457; 848 NW2d 169 (2014).

In this case, the victim was shown a single photograph of defendant, although she did not make an identification. This alone may be impermissibly suggestive, but the inquiry does not end there. Even if a witness is exposed to an unduly suggestive pretrial identification procedure, the witness's in-court identification will still be permitted if there is an independent basis for the in-court identification. *Gray*, 457 Mich at 114-115. The independent basis inquiry requires a factual analysis, and the validity of a witness's in-court identification must be viewed in light of the totality of the circumstances to determine whether the procedure was so impermissibly suggestive that it led to a substantial likelihood of misidentification. *Id.*; *People v Kurylczyk*, 443 Mich 289, 302; 505 NW2d 528 (1993). The following factors are considered in determining whether an independent basis exists for the admission of an in-court identification:

> (1) [P]rior relationship with or knowledge of the defendant; (2) opportunity to observe the offense, including length of time, lighting, and proximity to the criminal act; (3) length of time between the offense and the disputed identification; (4) accuracy of description compared to the defendant's actual appearance; (5) previous proper identification or failure to identify the defendant; (6) any prelineup identification lineup of another person as the perpetrator; (7) the nature of the offense and the victim's age, intelligence, and psychological state; and (8) any idiosyncratic or special features of the defendant. [*Davis*, 241 Mich App at 702-703.]

It is not necessary that all factors be given equal weight. *People v Kachar*, 400 Mich 78, 97; 252 NW2d 807 (1977).

Even assuming that it was impermissibly suggestive to show the victim a single photograph, the record sufficiently establishes that there was an independent basis to support the admissibility of the victim's in-court identification of defendant. The victim had an opportunity to observe the carjacker from a close distance before and during the incident. The victim initially saw the carjacker when he walked past her car before the incident. She saw him again when they were face-to-face as he pulled her out of the car, and when he backed up her car and drove away. According to the victim, she could clearly see defendant's half-masked face, she remembered his eyes, and she would "never forget [his eyes]." Although she did not identify defendant from his photograph, she explained that she recognized the eyes, and, although the photograph was clear,

the lighting in the photograph was "[a] little off." She further added that she could identify defendant at the preliminary examination from his eyes because they were in person, as opposed to her looking at a photograph. More than 11 months elapsed between the carjacking and the victim's identification of defendant, and the victim did not know defendant personally. These facts alone do not invalidate the victim's independent basis for identifying defendant because she had ample opportunity to view the perpetrator before and during the carjacking. *Kachar*, 400 Mich at 97. Further, when a witness does not identify a defendant in a pretrial lineup, the witness's in-court identification of a defendant is "a credibility issue that [is] properly before the jury to determine." *People v Barclay*, 208 Mich App 670, 676; 528 NW2d 842 (1995). The discrepancies noted by defendant do not diminish the validity of the independent basis supporting the victim's identification. Rather, they pertain to the reliability of the identification. Considering the victim's opportunity to observe defendant and the totality of the circumstances, the record supports that there was an independent basis for the identification of defendant. Accordingly, defendant failed to demonstrate plain error.[2]

---

[2] Defendant states additional issues for the record, but does not include them in the statement of questions presented. An issue that is not raised in the statement of questions presented is generally not properly presented for appellate review before this Court and is considered waived. *People v Fonville*, 291 Mich App 363, 383; 804 NW2d 878 (2011); MCR 7.212(C)(5). Even so, a Standard 4 brief is filed when a defendant insists on raising particular claims against the advice of counsel. Counsel is to provide procedural advice and clerical assistance to ensure that defendant's brief conforms to this Court's filing requirements. See Supreme Court Administrative Order No. 2004-6, Standard 4. Because there is no indication that clerical assistance was rendered to ensure that the Standard 4 brief conformed to this requirement, we will briefly address defendant's claims.

Defendant asserts that his right to a speedy trial was violated contrary to the Interstate Agreement on Detainers, MCL 780.601 *et seq.*, premised on defendant's alleged transfer from a Minnesota facility. At the pretrial hearing held on October 27, 2021, the prosecutor noted that defendant was a prisoner of the Michigan Department of Corrections, and a trial by date of November 14, 2021 would apply in the absence of COVID-19 issues and protocols. But defense counsel stated that he was unavailable for trial, citing a medical matter scheduled for surgery. The trial court accommodated the defense request to delay the trial and assessed the delay against defendant. Thereafter, action was taken within 180-days to ready the case for trial promptly and with dispatch. See *People v Lown*, 488 Mich 242, 260; 794 NW2d 9 (2011). Accordingly, this speedy-trial challenge does not entitle defendant to appellate relief.

Defendant further submits that he was deprived of his right of confrontation when the lead detective was not called to testify at trial and that defendant's attorney never told him that the lead detective was not going to be available or that defendant would not have an opportunity for cross-examination. As to these issues, defendant merely states them for the record without citation to the record or to any legal authority in support of these claims. See MCR 7.212(C)(7); *People v Henry*, 315 Mich App 130, 148-149; 889 NW2d 1 (2016) (When "defendant's brief is bereft of citations to the record or any analysis," this Court may treat the issue as abandoned.); *People v Watson*, 245 Mich App 572, 587; 629 NW2d 411 (2001) ("Defendant's failure to cite any

Affirmed.

/s/ Mark T. Boonstra
/s/ Anica Letica
/s/ Kathleen A. Feeney

---

supporting legal authority constitutes abandonment of this issue."). Regardless, the record reflects that the prosecution listed the lead detective as a potential trial witness before trial and that the court identified him as a potential witness during jury voir dire. Even so, the prosecution opted to rest without calling the lead detective as a witness and, after defense counsel presented defendant's testimony at trial, defense counsel informed the court that he had no additional witnesses and rested. Defendant has not demonstrated that plain error occurred because "the right to confrontation is not violated by the prosecution failing to call witnesses that defendant could have called to testify." *People v Cooper*, 236 Mich App 643, 659; 601 NW2d 409 (1999). Finally, to the extent that defendant's statement for the record implies that counsel performed deficiently by failing to call the lead detective as a witness, defendant has not established that counsel's performance was deficient and that he was prejudiced given the strong evidence presented against him at trial. See *People v Jurewicz*, 506 Mich 914; 948 NW2d 448 (2020); *People v Horn*, 279 Mich App 31, 39; 755 NW2d 212 (2008). Consequently, defendant is not entitled to appellate relief on the grounds he has stated for the record.