*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

UNPUBLISHED
July 18, 2024

Plaintiff-Appellee,

v

No. 363742
Kent Circuit Court
LC No. 19-009418-FC

KIRON LEN CURRY,

Defendant-Appellant.

Before: CAMERON, P.J., and M. J. KELLY and YATES, JJ.

PER CURIAM.

Defendant, Kiron Len Curry, appeals as of right his jury-trial convictions of assault with intent to murder, MCL 750.83; possession of a firearm in the commission of a felony (felony-firearm), MCL 750.227b; and felon in possession of a firearm, MCL 750.224f. The trial court sentenced Curry as a fourth-offense habitual offender, MCL 769.12, to serve 480 months to 100 years' imprisonment for the assault-with-intent-to-murder conviction, 60 months to 100 years' imprisonment for the felon-in-possession conviction, and 5 years' imprisonment for the felony-firearm conviction, to be served consecutive to his sentences for the other convictions. Because there are no errors warranting reversal, we affirm.

## I. BASIC FACTS

On June 25, 2019, at approximately 9:00 a.m., two men came to a house shared by Torey Sturdivant and his girlfriend. At the time Sturdivant was sleeping, so his girlfriend answered the door and allowed the men to come inside. After Sturdivant's girlfriend woke him, one of the men asked Sturdivant if he had heard "what happened the other night." Sturdivant stated that he had not. Although Sturdivant's girlfriend did not know who the men were, Sturdivant testified at the preliminary examination that one of the men was Curry. He explained that Curry was trying "to round up people" but that Curry did not explain the reason why. Sturdivant left the home with the men. They walked across the street and through a driveway before Sturdivant asked Curry if he was going to tell him what had happened. Curry turned around and said, "[M]other fucker, you know what happened" and then he started shooting. Sturdivant's girlfriend heard the shooting and went outside. Sturdivant yelled that he had been shot, so she called 9-1-1.

-1-

A police officer arrived and saw Sturdivant in a driveway. He had been shot multiple times and was not breathing. The officer performed cardiopulmonary resuscitation (CPR) until Sturdivant started breathing again. Thereafter, Sturdivant was taken to a hospital, where he underwent life-saving surgery. He was placed in a medically-induced coma for approximately one week and then endured a lengthy hospital stay. At the hospital, he spoke with police officers and identified Curry as the person who had shot him.

Curry was arrested on July 2, 2019. The preliminary examination was held on October 16, 2019. Trial was originally scheduled to take place on February 24, 2020; however, primarily because of the COVID-19 pandemic, Curry's trial was adjourned and rescheduled multiple times. In November 2020, Sturdivant died of injuries sustained in an unrelated motor-vehicle crash. Curry was not tried until April 2022. Prior to trial, Curry twice moved to dismiss the charges as a result of the violation of his constitutional right to a speedy trial. The court denied both motions.

At trial, the prosecution presented evidence that at approximately 3:30 a.m., Curry's cousin was shot. Curry visited her in the hospital. His phone records reflect that between 3:29 a.m. and 9:00 a.m., he had around 50 incoming and outgoing calls. Curry's cousin testified that she did not describe for Curry the person who shot her because she had not seen the shooter. Moreover, she denied asking Curry to get retribution for her. At trial, the prosecution's theory was that Curry believed that Sturdivant was the person who had shot his cousin and that, in turn, he had shot Sturdivant as revenge. To support that theory, the prosecution tried—unsuccessfully—to elicit testimony that Curry and his cousin were drug dealers who had sold to Sturdivant. Curry's cousin, however, denied that she or Curry were involved in selling drugs.

The jury found Curry guilty as charged. In May 2023, Curry moved for relief from judgment, arguing that one of his lawyers had provided him with constitutionally ineffective assistance. Following an evidentiary hearing, the trial court denied Curry's motion.

## II. OTHER-ACTS EVIDENCE

### A. STANDARD OF REVIEW

Curry first argues that the trial court abused its discretion by admitting other-acts evidence suggesting that he was a drug dealer. We review for an abuse of discretion a trial court's decision to admit evidence. *People v Denson*, 500 Mich 385, 396; 902 NW2d 306 (2017).

### B. ANALYSIS

Before trial, the prosecution filed a notice of intent to introduce other-acts evidence showing that there was "drug activity" among Curry, Curry's cousin, Curry's confederate, and Sturdivant. The prosecution contended that such evidence would show Curry's identity and would establish that he had a motive to shoot Sturdivant. Following a pretrial motion hearing, the trial court ruled that the evidence was admissible.

Subsequently, at trial, the prosecution attempted to elicit testimony from Curry's cousin that in 2019 both she and Curry had sold drugs to Sturdivant. However, Curry's cousin testified that, although Sturdivant used drugs, he never purchased any drugs from her or Curry. Moreover, she denied that she and Curry were "selling drugs at that time." On further questioning, she stated

-2-

that she was not going to incriminate herself by admitting that she was in the "drug trade" in 2019. The prosecutor stated that he would give Curry's cousin transactional immunity for anything "drug related that she testifies to" and then asked her again if she or Curry sold drugs in 2019. Curry's lawyer objected, arguing that the testimony was irrelevant, and the trial court sustained the objection. Accordingly, the record reflects that, although the prosecution attempted to elicit testimony showing that Curry and his cousin had sold drugs to Sturdivant, no such testimony was, in fact, admitted into evidence. Because no other-acts evidence was admitted, there is no factual basis for Curry's argument that the trial court abused its discretion by admitting other-acts evidence.[1]

## III. SPEEDY TRIAL

### A. STANDARD OF REVIEW

Curry next argues that he was denied his constitutional right to a speedy trial. "The determination whether a defendant was denied a speedy trial is a mixed question of fact and law." *People v Waclawski*, 286 Mich App 634, 664; 780 NW2d 321 (2009). "The factual findings are reviewed for clear error, while the constitutional issue is a question of law subject to review de novo." *Id*. "Violation of the constitutional right to a speedy trial requires dismissal of the charge with prejudice." *Id*. at 664-665.

### B. ANALYSIS

The United States Constitution and the Michigan Constitution both provide criminal defendants with the right to a speedy trial. US Const, Am VI; Const 1963, art 1. The following four factors are balanced when determining if a defendant has been denied his right to a speedy trial: "(1) the length of delay, (2) the reason for delay, (3) the defendant's assertion of the right, and (4) the prejudice to the defendant." *People v Williams*, 475 Mich 245, 261-262; 716 NW2d 208 (2006); see also *Barker v Wingo*, 407 US 514, 530; 92 S Ct 2182; 33 L Ed 2d 101 (1972). "Following a delay of eighteen months or more, prejudice is presumed, and the burden shifts to the prosecution to show that there was no injury." *Williams*, 475 Mich at 262.

"The time for judging whether the right to a speedy trial has been violated runs from the date of the defendant's arrest." *People v Smith*, ___ Mich App ___, ___; ___ NW2d ___ (2024) (Docket No. 362114); slip op at 3 (quotation marks and citation omitted), lv pending. Curry was arrested on July 2, 2019 and was not tried until April 2022. Because the delay was more than eighteen months, it is presumed that Curry was prejudiced. The trial court properly found that this factor favored Curry.

---

[1] To the extent that the jury could have surmised from the prosecutor's questions that Curry and his cousin were drug dealers, the jury was properly instructed that it had to decide the case based upon the evidence and that the lawyers' questions to the witnesses were not evidence. It is presumed that jurors follow their instructions. *People v Mahone*, 294 Mich App 208, 212; 816 NW2d 436 (2011).

Factor 2 requires a court to consider the reason for the delay. *Id.* at ___; slip op at 3. "In assessing this factor, reviewing courts 'may consider which portions of the delay were attributable to each party when determining whether a defendant's speedy trial rights have been violated and may attribute unexplained delays—or inexcusable delays caused by the court—to the prosecution.' " *Id.*, quoting *People v Lown*, 488 Mich 242, 261-262; 794 NW2d 9 (2011). Here, the parties agree that the primary reasons for the delay were caused by the COVID-19 pandemic. On appeal, Curry contends that delays attributable to the pandemic should be weighed against the prosecution or, at the very least, should be treated neutrally. However, in *Smith*, this Court rejected that argument and held "that delays caused by the COVID-19 pandemic are not attributable to the prosecution for purposes of a speedy-trial claim." *Id.* at ___; slip op at 5. The *Smith* Court reasoned that "[u]nlike delays inherent in the court system which are attributable to the prosecution, delays resulting from emergency public-health measures during an unprecedented global pandemic are anything but" inherent in the system. *Id.*, (citation omitted). Additionally, the "pandemic-related delays" were neither "unexplained nor inexcusable." *Id.* Here, as in *Smith*, it was "the extenuating circumstances brought about by the pandemic" that prevented the prosecution from trying Curry in a speedy fashion. Thus, the trial court did not clearly err by declining to attribute the reason for the delay to the prosecution.

The third factor considers when the defendant first asserts his or her right to a speedy trial. *Williams*, 475 Mich at 261-262. Curry first asserted his right to a speedy trial in October 2020, which is approximately 15 months after his arrest in July 2019. He reasserted his right in July 2021. The trial court did not clearly err by weighing this factor in favor of Curry.

The final factor considers prejudice to the defendant. *Id.* at 262. A defendant may suffer "prejudice to his person and prejudice to the defense." *Id.* at 264. (quotation marks and citation omitted). A defendant's pretrial incarceration, which may cause anxiety, can cause prejudice to the defendant's person. *Smith*, ___ Mich App at ___; slip op at 6. Curry does not assert that he sustained prejudice to his person. Rather, he contends that he sustained prejudice to his defense because Sturdivant died before trial. As explained in *Smith*, "[i]mpairment of defense is the most serious form of prejudice in the context of a speedy-trial claim because the inability of a defendant adequately to prepare his case skews the fairness of the entire system." *Id.* (quotation marks and citation omitted). "If witnesses die or disappear during a delay, the prejudice is obvious." *Barker*, 407 US at 532. However, notwithstanding that the death of a witness is prejudicial, it is not automatic that a witness' death will cause prejudice to the defense. See *Smith*, ___ Mich App at ___; slip op at 6 (holding that although a witness had died the defense was not prejudiced by the death). Rather, "in considering prejudice, a reviewing court should look for examples about how the delay between arrest and trial harmed the defendant's ability to defend against the charges." *Smith*, ___ Mich App at ___; slip op at 6.

In this case, Sturdivant's preliminary examination testimony was admitted at trial under MRE 804(b)(1), which allows for the admission of a witness' former testimony if the testimony was "given as a witness at another hearing of the same or a different proceedings" and if the party opposing admission had "an opportunity and similar motive to develop the testimony by direct, cross, or direct examination." Curry had the opportunity to cross examine Sturdivant at the preliminary examination, and his motive to develop the testimony at that time was similar to what his motive would have been at trial.

Indeed, the record reflects that on cross-examination Curry's lawyer impeached Sturdivant, who admitted that he was a "crack fiend," that he did not see a gun in Curry's hands, and that his girlfriend had told him her version of events once he had awoken from his coma. In addition, he elicited testimony that Sturdivant referred to Curry as "Banks." At trial, he was then able to elicit testimony from his cousin that his nickname was "Bankhead" and that other people in the area used the moniker "Banks." Further, on cross-examination, the police officer who interviewed Sturdivant testified that, after he awoke from his coma, Sturdivant only identified his shooter as "Banks," which allowed the police to connect the name to Curry. The officer added that Sturdivant later identified Curry as the shooter from a photographic array.

Curry now complains that both the direct examination and the cross examination at the preliminary examination were "inadequate" and he notes that he was unaware at the time of the preliminary examination that he would be unable to conduct a more "robust" cross examination later. He identifies, however, no specific instances of inadequacy in the cross examination. Further, he had not explained what questions would have been asked as part of a more robust cross examination. Moreover, the prosecution correctly notes that it bore the burden of establishing guilt beyond a reasonable doubt. The fact that its key witness died before trial left the prosecution unable to conduct a more robust direct and re-direct examination. For instance, it was not able to present testimony from Sturdivant either confirming that he had purchased drugs from Curry and his cousin or corroborating her testimony that they had not sold him drugs. Because of Sturdivant's death, the prosecution was left with Curry's cousin's testimony denying drug use, which weakened its theory that the motive of the shooting was retaliation for Sturdivant shooting one of his drug dealers. The prosecution's inability to present that testimony benefited the defense.

Curry also contends that the death prejudiced him because the jury would be unable to look in Sturdivant's eyes, look at his furtive gestures, or see his body posture. However, as recognized by the trial court, both the prosecution and the defense were equally deprived of the opportunity to have the jury observe Sturdivant's demeanor. Curry has directed this Court to nothing suggesting that Sturdivant's demeanor when testifying would have benefited the defense. Given the record in this case, we conclude that the trial court did not clearly err by finding that this factor was neutral and that the prosecution had overcome the presumption of prejudice.

In sum, two of the *Williams* factors were neutral and two weighed in favor of Curry. Despite its neutral weight, the court found that the most important factor in this case was the reason for the delay. Indeed, given the unprecedented nature of the COVID-19 pandemic and the response to it, holding a trial was impossible. Considering that there was no prejudice to the defense, a finding that this factor overwhelmed the factors favoring the defense is not clearly erroneous. Thus, balancing all the relevant factors, we conclude that Curry did not establish a violation of his right to a speedy trial.

## IV. INEFFECTIVE ASSISTANCE

### A. STANDARD OF REVIEW

Curry next argues that he is entitled to relief because one of his lawyers provided ineffective assistance to him during the plea-agreement negotiations. Because an evidentiary hearing was held in this case, we review the trial court's factual findings for clear error and we

review its conclusions of law de novo. See *People v LeBlanc*, 465 Mich 575, 579; 640 NW2d 246 (2002). "A finding of fact is clearly erroneous if, after a review of the entire record, an appellate court is left with a definite and firm conviction that a mistake has been made." *People v Antwine*, 293 Mich App 192, 194; 809 NW2d 439 (2011) (quotation marks and citation omitted).

## B. ANALYSIS

The final plea deal offered to Curry required him to plead guilty to assault with intent to commit murder and felony-firearm. In exchange the remaining charges would be dismissed, the felony-firearm conviction would be treated as a two-year offense, and the sentencing guidelines on the assault-with-intent-to-murder conviction would be limited to 10 years' imprisonment. Curry rejected the agreement and proceeded to trial.

Curry had two lawyers in the case. His primary lawyer presented his defense. However, because he had an existing relationship with a different lawyer, he hired that lawyer to oversee his primary lawyer. Curry trusted his secondary lawyer more than his primary lawyer. At sentencing, Curry stated that his secondary lawyer discouraged him from accepting the plea offer because "the prosecution had no evidence." Curry added that he "chose to go to trial because I wanted in the future to file leave to an appeal or an appeal." Subsequently, he moved for relief from judgment, arguing that his secondary lawyer provided ineffective assistance during the plea negotiations.

"Defendants are entitled to the effective assistance of counsel when considering or negotiating a plea agreement." *People v White*, 331 Mich App 144, 148; 951 NW2d 106 (2020). A defense lawyer's obligation when discussing a plea offer is to "properly advise defendant regarding the nature of the charges or the consequences of the guilty plea and the possible defenses to the charges to which the defendant is pleading guilty so defendant has the ability to make an intelligent and informed choice from among his alternative courses of action." *Id*. (quotation marks and citation omitted). "The defendant has the burden of establishing the factual predicate of his ineffective assistance claim." *People v Douglas*, 496 Mich 557, 592; 852 NW2d 587 (2014).

At the evidentiary hearing, Curry testified that he had told his primary lawyer that he would take the plea offer. He stated that his secondary lawyer interjected and told him to reject the offer. He stated that his secondary lawyer advised him that "the prosecution's case was weak" and that Curry "was going to go home." Curry's primary lawyer, however, testified that Curry never told him that he was going to accept the offer (although he believed that Curry might do so). He added that he did not hear the secondary lawyer interject that the plea offer should be rejected. In turn, Curry's secondary lawyer testified that he had over 40 years of experience as a defense lawyer and that he had never advised any client that he or she should not accept a plea offer because he or she was certain to win at trial. Rather, he stated that he was thrilled with the plea offer and that he strongly urged Curry to accept it.

The trial court found that Curry's testimony that his secondary lawyer told him that the prosecutor's case was weak and that he would win at trial was not credible. Rather, the court concluded that although Curry's secondary lawyer might have advised Curry of the weaknesses of the prosecution's case, the court found credible the lawyer's testimony that he had not advised Curry that he was likely to win at trial. The court's findings, which are based upon the testimony presented, were not clearly erroneous. Because the court found that Curry's secondary lawyer did

not actually advise him to reject the plea offer because he would win at trial, Curry cannot establish the factual predicate for his claim. See *id*. He cannot, therefore, prevail on his ineffective-assistance claim.

Moreover, assuming arguendo that Curry's secondary lawyer actually provided ineffective assistance by advising Curry to reject the plea offer because he would prevail at trial, Curry cannot establish that he was prejudiced as a result. When a defendant "claims to be prejudiced by rejecting a plea offer on the basis of ineffective assistance" from his or her lawyer, the defendant must show

> (1) that but for the ineffective advice of counsel there is a reasonable probability that the plea offer would have been presented to the court (i.e., that the defendant would have accepted the plea and the prosecution would not have withdrawn it in light of intervening circumstances); (2) that the court would have accepted its terms; and (3) that the conviction or sentence, or both, under the offer's terms would have been less severe than under the judgment and sentence that in fact were imposed. [*Id*. at 150, quoting *Lafler v Cooper*, 566 US 156, 163-164; 132 S Ct 1376; 182 L Ed 2d 398 (2012) (quotation marks omitted).]

At the evidentiary hearing, Curry testified that he would have taken the plea offer if his secondary lawyer had not advised against it. However, he also testified that it was his "point of view" that he was going to plead no contest to the charges and that he could "still take responsibility for the case without pleading guilty." The court recognized, however, that that plea offer required Curry to plead guilty. Based upon Curry's testimony and the terms of the plea offer, the trial court stated that it did not find credible Curry's testimony that "he only rejected the plea offer at the urging of" his secondary lawyer. That finding was not clearly erroneous. Curry, therefore, has failed to establish that, but for his secondary lawyer's allegedly deficient performance, he would have accepted the plea offer.

On this record, Curry cannot establish that his secondary lawyer provided constitutionally deficient assistance.

## V. SENTENCE

### A. STANDARD OF REVIEW

Curry next challenges the trial court's decision to score offense variable (OV) 6 at 50 points. The trial court's factual determinations regarding the OVs must be supported by a preponderance of the evidence. *People v Osantowski*, 481 Mich 103, 111; 748 NW2d 799 (2008). We review the trial court's factual determinations at sentencing for clear error. *People v Hardy*, 494 Mich 430, 438; 835 NW2d 340 (2013). "Whether the facts, as found, are adequate to satisfy the scoring conditions prescribed by statute, i.e., the application of the facts to the law, is a question of statutory interpretation, which an appellate court reviews de novo." *Id*.

### B. ANALYSIS

The trial court must score OV 6 if the defendant is convicted of "homicide, attempted homicide, conspiracy or solicitation to commit a homicide, or assault with intent to commit

murder." MCL 777.22(1). The score assessed must be "consistent with a jury verdict unless the judge has information that was not presented to the jury." MCL 777.36(2)(a). Fifty points should be assessed if "[t]he offender had premeditated intent to kill . . . ." MCL 777.36(a).

Courts may consider the following factors when determining whether a defendant's actions were premeditated: "(1) the previous relationship between the defendant and the victim; (2) the defendant's actions before and after the crime; and (3) the circumstances of the killing itself, including the weapon used and the location of the wounds inflicted." *People v Plummer*, 229 Mich App 293, 301; 581 NW2d 753 (1998). A factfinder may infer premeditation "from all the facts and circumstances, but the inferences must have support in the record and cannot be arrived at by mere speculation." *Id*. at 301.

In this case, the trial court found that Curry's actions were premeditated. The court reasoned:

> The facts of this case indicate that [Curry] and another gentleman . . . went to this house where [Sturdivant] and his girlfriend and their children resided. And they went to talk to him and they induced him to come outside, I think on a pretext. Maybe it was a pretext. Maybe there wasn't. But then they went to this secluded area, and then they just started shooting him. To me, that sounds like premeditation, and I think it's scored properly, so I'm going to respectfully deny that request.

Given that the testimony in this case reflects that Curry and his confederate travelled to Sturdivant's residence, lured him outside by telling him that something had happened, led him out of the sight of his girlfriend, and then shot him multiple times without warning, the trial court's finding of premeditation is not clearly erroneous.

On appeal, Curry argues that his conduct was not premeditated because the record does not provide evidence of any preexisting motive or threats by him toward Sturdivant. The jury, however, could infer that Curry believed that Sturdivant was involved in shooting his cousin. Curry went to the hospital shortly after his cousin was shot. He then made and received a large number of telephone calls between the time when she was admitted to the hospital and when Sturdivant was shot. After making and receiving those calls, he travelled with his confederate (who was the father of his cousin's children) to Sturdivant's house and engaged in the premeditated conduct that has been described *supra*. Thus, based upon the facts and circumstances, there is evidence of a preexisting motive in this case. Regardless, the prior relationship between the defendant and the victim is only one factor that *may* be considered when determining if there was premeditation. See *Plummer*, 229 Mich App at 300.

In sum, the trial court did not err by finding that defendant's conduct was premeditated and scoring OV 6 at 50 points. Resentencing, therefore, is not warranted.

## VI. HABITUAL OFFENDER

Lastly, Curry argues that the Supreme Court's decision in *People v Gardner*, 482 Mich 41; 753 NW2d 78 (2008) was wrongly decided. However, he acknowledges that this Court is bound by that decision and he has stated that he is only raising the issue for preservation purposes.

Because he concedes that, under *Gardner*, the trial court did not err by sentencing him as a fourth-offense habitual offender, and because this Court is bound by the decision in *Gardner*, we conclude that Curry is not entitled to relief on this issue.

Affirmed.

/s/ Thomas C. Cameron
/s/ Michael J. Kelly
/s/ Christopher P. Yates