*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

UNPUBLISHED
August 22, 2024

Plaintiff-Appellee,

v                                                                No. 365557
                                                                 Ingham Circuit Court
KYLE JERMAINE BUCHANAN,                                          LC No. 19-000501-FH

Defendant-Appellant.

Before: REDFORD, P.J., and GADOLA, C.J., and RIORDAN, J.

PER CURIAM.

Defendant appeals as of right his jury-trial convictions of two counts of third-degree
criminal sexual conduct (CSC-III), MCL 750.520d(1)(b) (sexual penetration accomplished by
force or coercion), and one count of fourth-degree criminal sexual conduct (CSC-IV), MCL
750.520e(1)(b) (sexual contact accomplished by force or coercion). Defendant was sentenced to
serve concurrent terms of 180 to 270 months' imprisonment for each CSC-III conviction and 24
to 36 months' imprisonment for his CSC-IV conviction. We affirm.

## I. BACKGROUND

This case arises from defendant's sexual assault of the minor victim, who was 16 years old
at the time of the assault. The victim testified that defendant, who is his godfather, invited him
over to his house to help fix an air conditioner. Defendant then purchased video games for the
victim and watched movies with him before the victim fell asleep. The victim woke up to
defendant sexually assaulting him. The victim described aspects of the assault, which included
defendant touching the victim's penis, defendant using the victim's hand to touch the victim's
penis, defendant using a sex toy on the victim, defendant putting the victim's penis in his mouth,
and defendant attempting to have the victim's penis penetrate defendant's anus. After the assault,
defendant gave the victim money, which the victim believed to be a bribe. Defendant drove the
victim home and the victim disclosed the assault to his mother, who reported the incident to the
police.

At trial, the prosecution also relied on the testimony of two men who described similar
conduct from an incident approximately 30 years earlier. Defendant denied sexually assaulting

-1-

the victim and argued that the victim fabricated his allegations to prevent defendant from disclosing the victim's substance use and sexual activity. The jury convicted defendant as noted. Defendant now appeals.

## II. SPEEDY TRIAL

On appeal, defendant argues that he was denied his right to a speedy trial. We disagree.

The determination whether a defendant was denied a speedy trial is a mixed question of fact and law. *People v Gilmore*, 222 Mich App 442, 459; 564 NW2d 158 (1997). We review the trial court's factual findings for clear error, but evaluate constitutional questions de novo. *Id*. "Clear error exists if the reviewing court is left with a definite and firm conviction that a mistake has been made." *People v Miller*, 482 Mich 540, 544; 759 NW2d 850 (2008) (quotation marks and citation omitted).

Both the United States Constitution and the Michigan Constitution guarantee criminal defendants the right to a speedy trial. US Const, Am VI; Const 1963, art 1, § 20. "[A] defendant's right to a speedy trial is not violated after a fixed number of days." *People v Williams*, 475 Mich 245, 261, 716 NW2d 208 (2006). Rather, the court reviewing a defendant's speedy-trial claim must balance the four *Barker*[1] factors: "(1) the length of delay, (2) the reason for delay, (3) the defendant's assertion of the right, and (4) the prejudice to the defendant." *Id*. at 261-262. "Following a delay of eighteen months or more, prejudice is presumed, and the burden shifts to the prosecution to show that there was no injury." *Id*. at 262. "Under the *Barker* test, a presumptively prejudicial delay triggers an inquiry into the other factors to be considered in the balancing of the competing interests to determine whether a defendant has been deprived of the right to a speedy trial." *Id*. (quotation marks and citation omitted). A violation of a defendant's constitutional right to a speedy trial requires "dismissal of the charge with prejudice." MCR 6.004(A).

We begin first with the length of the delay. "The time for judging whether the right to a speedy trial has been violated runs from the date of the defendant's arrest." *Williams*, 475 Mich at 261. In this case, defendant was arrested for sexually assaulting the victim on June 15, 2019, and his trial began on December 2, 2022. Accordingly, the length of the delay between defendant's arrest and trial was over 41 months. Prejudice to defendant is presumed and the burden shifts to the prosecution. See *id*. at 262.

Second, we consider the reason for the delay. Although the inherent delays and docket congestion of the court system are "technically attributable to the prosecution, they are given a neutral tint and are assigned only minimal weight in determining whether a defendant was denied a speedy trial." *People v Smith*, ___ Mich App ___, ___; ___ NW3d ___ (2024) (Docket No. 362114); slip op at 3 (quotation marks and citation omitted). Further, the minimal weight

---

[1] *Barker v Wingo*, 407 US 514, 530; 92 S Ct 2182; L Ed 2d 101 (1972). The *Barker* factors were first adopted by the Michigan Supreme Court in *People v Grimmett*, 388 Mich 590, 602-606; 202 NW2d 278 (1972), overruled on other grounds by *People v White*, 390 Mich 245, 258; 212 NW2d 222 (1973).

assigned to the prosecution for docket congestion may be given even less weight if the congestion and delay was "generally explained and excusable." *People v Lown*, 488 Mich 242, 259; 794 NW2d 9 (2011). We have previously addressed how delays related to the COVID-19 pandemic should be evaluated under *Barker* and held that "delays caused by the COVID-19 pandemic are not attributable to the prosecution for purposes of a speedy-trial claim." *Smith*, ___ Mich App at ___; slip op at 5.

It is undisputed that the COVID-19 pandemic was largely responsible for the delay in this case. At the start of this case, both parties worked toward a trial date for eight months before the emergence of the COVID-19 pandemic, with minor delays attributable to the parties' motions or scheduling conflicts. The trial was originally scheduled for January 2020, and was adjourned for older cases to take priority that week. The trial was rescheduled for March 30, 2020; however, the onset of the COVID-19 pandemic intervened and the trial was again delayed. The short delay caused by docket congestion before the onset of the COVID-19 pandemic was technically attributable to the prosecution but with a neutral tint. See *id*. at ___; slip op at 3. The remaining delay was the emergence and continuance of the COVID-19 pandemic, which included the suspension of jury trials and accumulation of cases awaiting trial.[2] This was the reason for nearly all delay in this case. Neither the trial court nor the prosecution was responsible for the docket congestion and delays caused by the state's COVID-19 safety protocols, which were outside the control of the parties and the court. See *id*. at ___; slip op at 5. Therefore, the over 41-month delay in defendant's case cannot be attributed to the prosecution to support defendant's claim.

Third, we consider defendant's assertion of the right to a speedy trial. This factor only weighs slightly in defendant's favor. Review of the record suggests that defendant was unconcerned about whether he received a speedy trial. Defendant moved once to dismiss his case for a violation of his speedy-trial right in April 2021. Defendant, out on bond and represented by counsel, waited 22 months after his arrest to assert his right to a speedy trial at a time that the trial court could not conduct jury trials. During the hearing on defendant's motion, the trial court noted that defendant's case would be heard as soon as the court was able, but explained that priority would be given to defendants who had been incarcerated longer than defendant's case had been pending. Following this motion, defendant did not renew his motion to dismiss his case on speedy-trial grounds in the remaining 18 months before trial, including when the trial courts started conducting jury trials again. Accordingly, defendant's decision to wait to assert his speedy-trial right and failure to renew that assertion does not weigh strongly in his favor. Cf. *People v Cain*, 238 Mich App 95, 113-114; 605 NW2d 28 (1999) ("[W]e cannot ignore the fact that Cain waited eighteen months to assert her right to a speedy trial and that her trial commenced within nine months of when she asserted that right.").

---

[2] Beginning in March 2020, the Michigan Supreme Court adopted emergency procedures in the state's court facilities. See Administrative Order No. 2020-1, 505 Mich xcix (2020). The Supreme Court later imposed limits on trial court proceedings and limited courtroom access to no more than 10 persons. Administrative Order No. 2020-2, 505 Mich cii (2020). On April 23, 2020, the Supreme Court delayed all jury trials until June 22, 2020, or until further order of the Court. See Administrative Order No. 2020-10, 505 Mich cxxxix.

Finally, evaluating the fourth factor, the record does not establish that defendant was prejudiced by the delay. We consider the two types of prejudice a defendant may experience, "prejudice to his person and prejudice to the defense." *Williams*, 475 Mich at 264 (quotation marks and citation omitted). "Prejudice to the defense is the more serious concern, because the inability of a defendant adequately to prepare his case skews the fairness of the entire system." *Id*. (quotation marks and citation omitted). General allegations of prejudice are insufficient to establish that a defendant was denied his right to a speedy trial or that prejudice was suffered as a result of the delay. See, e.g., *Gilmore*, 222 Mich App at 462. The death of witnesses or loss of memory caused by a delay can prejudice a defendant, but "in considering prejudice, a reviewing court should look for examples about how the delay between arrest and trial harmed the defendant's ability to defend against the charges." *Smith*, ___ Mich App at ___; slip op at 6.

In the present case, prejudice is presumed because of the lengthy delay between arrest and trial. Defendant generally argues that he personally "endured over three years of anxiety and concern which accompanied the public accusation that he committed sexual assaults." Although an appropriate factor to consider, standing alone anxiety is not sufficient to establish prejudice. See *id*. (providing that "while anxiety caused by a lengthy delay can occur, anxiety alone cannot establish a speedy-trial violation"). We acknowledge that the pending charges understandably caused defendant to experience stress and anxiety while awaiting trial. However, defendant was out on bond for all but the first 21 days following his arrest. Personal prejudice to defendant was minimized in light of the fact that defendant was out on bond for most of the time he awaited trial.

Addressing the more significant form of prejudice, prejudice to his defense, defendant only generally asserts that time may have weakened witnesses' memories. A lapse in time may make presenting a defense more difficult, but defendant does not provide any specific allegations or examples of how his ability to defend against the charges had been hindered by weakened memories. See *id*. Likewise, defendant did not assert some other prejudice to his defense such as an inability to secure witnesses or evidence for trial due to the delay. Accordingly, defendant has failed to demonstrate that his defense suffered prejudice by the delay.

In sum, although the delay in bringing defendant to trial was substantial, the record shows that most of the delay was attributable to the COVID-19 pandemic, which is not held against the prosecutor. Defendant only asserted his right to a speedy trial once at a time when the trial court could not hold jury trials. Further, because defendant was out on bond during almost all of the period of delay, any prejudice to his person was minimal, and there is no indication that the delay prejudiced his ability to present a defense against the charges. Balancing these factors, defendant has not established a violation of his right to a speedy trial.

### III. OTHER-ACTS EVIDENCE

Next, defendant argues that the trial court erred by allowing the prosecutor to present other-acts testimony from two witnesses, the first of whom defendant tried to sexually assault 30 years ago, and the second of whom defendant sexually assaulted 30 years ago. Defendant contends that this evidence constituted impermissible propensity evidence that was irrelevant and more prejudicial than probative. We disagree.

We review preserved evidentiary challenges "for an abuse of discretion, but review de novo preliminary questions of law, such as whether a rule of evidence precludes admissibility." *People v Chelmicki*, 305 Mich App 58, 62; 850 NW2d 612 (2014). "The decision to admit evidence is within the trial court's discretion and will not be disturbed unless that decision falls outside the range of principled outcomes." *People v Thorpe*, 504 Mich 230, 251-252; 934 NW2d 693 (2019) (quotation marks and citations omitted). "A decision on a close evidentiary question ordinarily cannot be an abuse of discretion." *Id.*

At the time of defendant's trial, MRE 404(b)(1) provided, in relevant part, that "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith."[3] MCL 768.27a provides an exception to MRE 404(b)(1)'s general prohibition of propensity evidence in cases involving the sexual abuse of minors. *People v Muniz*, 343 Mich App 437, 457; 997 NW2d 325 (2022). MCL 768.27a provides, in relevant part:

> (1) Notwithstanding [MCL 768.27[4]], in a criminal case in which the defendant is accused of committing a listed offense against a minor, evidence that the defendant committed another listed offense against a minor is admissible and may be considered for its bearing on any matter to which it is relevant.

Evidence of prior acts is relevant if the evidence has any tendency to make material facts or issues more or less probable. MRE 401. "[E]vidence of similar misconduct is logically relevant to show that the charged act occurred where the uncharged misconduct and the charged offense are sufficiently similar to support an inference that they are manifestations of a common plan, scheme, or system." *People v Sabin (After Remand)*, 463 Mich 43, 63; 614 NW2d 888 (2000). "Logical relevance is not limited to circumstances in which the charged and uncharged acts are part of a single continuing conception or plot." *Id.* at 64. "General similarity between the charged and

---

[3] The Michigan Rules of Evidence were substantially amended on September 20, 2023, effective January 1, 2024. See ADM File No. 2021-10, 512 Mich lxiii (2023). MRE 404(b)(1) now provides that "[e]vidence of any other crime, wrong, or act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." We apply the versions of court rules in effect at the time of trial.

[4] MCL 768.27 states:

> In any criminal case where the defendant's motive, intent, the absence of, mistake or accident on his part, or the defendant's scheme, plan or system in doing an act, is material, any like acts or other acts of the defendant which may tend to show his motive, intent, the absence of, mistake or accident on his part, or the defendant's scheme, plan or system in doing the act, in question, may be proved, whether they are contemporaneous with or prior or subsequent thereto; notwithstanding that such proof may show or tend to show the commission of another or prior or subsequent crime by the defendant.

uncharged acts does not, however, by itself, establish a plan, scheme, or system used to commit the acts." *Id.*

Defendant argues that the other-acts evidence was not relevant because it was the result of a juvenile adjudication and the current case involves an adult sexually assaulting a minor. This argument ignores the strong similarities between the circumstances of the juvenile adjudication and the current conduct. The other-acts evidence had probative value because it tended to show defendant's propensity to sexually assault preadolescent and adolescent males to whom he had access. See MRE 401. The first witness testified that defendant babysat him and his friends when he was approximately 11 years old. While defendant babysat the witnesses, they watched a movie and went to sleep, but the first witness woke up to find defendant attempting to grab the waistband of his pants. The first witness watched defendant turn his attention to the second victim, who defendant later sexually assaulted that night. The second witness testified that defendant was his tae kwon do instructor and babysitter, and that defendant gave him special treatment as a child by taking him to the mall and buying him gifts. The second witness explained that defendant invited him to his home and touched the witness's penis, rubbed his penis on the witness's genitals, and put his penis in the witness's mouth after he went to bed on several occasions. Defendant told the second witness not to disclose the assaults. The other-acts evidence of defendant's prior sexual assaults was extremely relevant to demonstrate that defendant purposefully gained the trust of his victims through a close relationship, isolated his victims, assaulted them while they slept, and attempted to keep the victims from disclosing what had happened. See *Sabin*, 463 Mich at 63.

We also conclude that this evidence was not unduly prejudicial. Relevant evidence admissible under MCL 768.27a is still subject to exclusion under the MRE 403[5] balancing test. *People v Watkins*, 491 Mich 450, 486; 818 NW2d 296 (2012). "[W]hen applying MRE 403 to evidence admissible under MCL 768.27a, courts must weigh the propensity inference in favor of the evidence's probative value rather than its prejudicial effect." *Id.* at 487. Courts may consider the following nonexhaustive factors when considering whether propensity evidence is unduly prejudicial:

> (1) the dissimilarity between the other acts and the charged crime, (2) the temporal proximity of the other acts to the charged crime, (3) the infrequency of the other acts, (4) the presence of intervening acts, (5) the lack of reliability of the evidence supporting the occurrence of the other acts, and (6) the lack of need for evidence beyond the complainant's and the defendant's testimony. [*Id.* at 487-488.]

Consideration of these factors does not indicate that admission of the other-acts evidence was unduly prejudicial. As already noted, the other-acts evidence was similar to the charged crimes. The other acts against the second witness resulted in a juvenile adjudication for defendant,

_____

[5] At the time of defendant's trial, MRE 403 provided:

> Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

making them reliable. Although there was a 30-year gap between the other acts and the charged conduct, we have previously noted that "MCL 768.27a does not contain a temporal limitation." *People v Brown*, 294 Mich App 377, 387; 811 NW2d 531 (2011). Further, we have stated that when other acts and a charged offense share significant similarity, "the temporal divide between their occurrences, standing alone, does not preclude the evidence's admission." *People v Solloway*, 316 Mich App 174, 195; 891 NW2d 255 (2016). The other-acts evidence and the charged conduct are notably similar and weigh in favor of admission, despite the lack of temporal proximity. With respect to the infrequency of the assaults and the intervention of 30 years, we note that defendant was incarcerated for approximately 11 years during the 30-year gap, making the infrequency and passage of time, while still marginally favorable toward defendant, less noteworthy because of his inability to reoffend during his incarceration. Finally, the other-acts evidence was necessary to rebut defendant's attack on the victim's credibility. Defendant's theory at trial was that the victim had fabricated his allegations to prevent defendant from disclosing his substance use and sexual activity. There was no physical evidence in this case. The prosecution's case depended on the victim's testimony regarding the assault, and the other-acts evidence was needed to support the victim's credibility.

Ultimately, the other-acts evidence was probative. Although the evidence was prejudicial to defendant, it was not so prejudicial that we are convinced that the trial court's decision to admit the two witnesses' testimony fell outside the range of reasonable outcomes.

## IV. PRIVILEGED RECORDS

Defendant next argues that the trial court erred by denying his motion for *in camera* review of the victim's counseling records and school counseling, discipline, and attendance records. We disagree.

We review discovery rulings for an abuse of discretion. *People v Jack*, 336 Mich App 316, 321; 970 NW2d 443 (2021). "The trial court abuses its discretion when its decision falls outside the range of principled outcomes or when it erroneously interprets or applies the law." *Id*. at 322 (quotation marks and citation omitted). "Discovery should be granted where the information sought is necessary to a fair trial and a proper preparation of a defense." *People v Davis-Christian*, 316 Mich App 204, 207; 891 NW2d 250 (2016) (quotation marks and citation omitted). "Nevertheless, defendants generally have no right to discover privileged records absent certain special procedures, such as an in camera review of the privileged information conducted by the trial court." *Id*. at 207-208.

When seeking privileged records, a defendant must establish a "good-faith belief, grounded on some demonstrable fact, that there is a reasonable probability that the records are likely to contain material information necessary to the defense." *People v Stanaway*, 446 Mich 643, 677; 521 NW2d 557 (1994). Upon making the requisite showing, the trial court should conduct an *in camera* inspection of the privileged records. *Id*. at 678-679. If the records contain evidence that is reasonably necessary to the defense, the trial court must supply that evidence to the defendant. *Id*. at 649-650. However, disclosure is inappropriate "when the record reflects that the party seeking disclosure is on a fishing expedition to see what may turn up." *Id*. at 680 (quotation marks and citation omitted). "A defendant is fishing for information when he or she relies on generalized assertions and fails to state any specific articulable fact that indicates the privileged records are

needed to prepare a defense." *Davis-Christian*, 316 Mich App at 208 (quotation marks and citation omitted).

The *Stanaway* Court applied these standards to discovery requests in two companion cases. The first defendant, Stanaway, made only "a generalized assertion that the [victim's] counseling records may contain evidence useful for impeachment on cross-examination," which was insufficient to establish a reasonable probability that the records contained material information for his defense and a need that could apply to every case involving criminal sexual conduct. *Stanaway*, 446 Mich at 681. The second defendant, Caruso, however, alleged that the victim "suffered sexual abuse by her biological father before this allegation of abuse, the nonresolution of which produced a false accusation, and factual support for some sexually aggressive behavior, namely, writing a letter to her mother's live-in boyfriend inviting him to have sex with her in his car." *Id*. at 682-683. *In camera* review of privileged records may have been proper in Caruso's case given the particularized basis of the second defendant's request. *Id*. at 683.

Defendant's motion in this case bears a greater similarity to that of defendant Stanaway. In his initial motion, defendant stated that he became aware of the victim consuming alcohol, using marijuana, and having sex with a "peer-age female" on May 24, 2018, and he argued that the victim fabricated sexual assault allegations to prevent him from disclosing information about the victim. Defendant believed that the victim's counseling records and school discipline, counseling, and attendance records would contain evidence to support defendant's theory, but he did not provide evidence to support his belief in his motion or at the motion hearing. The only support for defendant's assertion was his knowledge that the victim attended counseling through Clinton Eaton Ingham Community Mental Health and that the victim was a student in the Lansing School District. Defendant has not demonstrated how his need for impeachment evidence differs from that in any criminal sexual conduct case, and the fact that the victim attended counseling and school was not a demonstrable fact that established a reasonable probability that the records are likely to contain material information necessary to defendant. See *id*. at 677.

In consideration of the standards applied in *Stanaway* and the generalized assertions raised by defendant, we conclude that the trial court did not abuse its discretion by denying defendant's motion for *in camera* review of the victim's privileged records.

## V. JUDICIAL BIAS

Lastly, defendant argues that he was denied a fair trial because the trial court's questioning of the victim pierced the veil of impartiality. We disagree.

We review unpreserved claims of judicial bias for plain error affecting defendant's substantial rights. *People v Jackson*, 292 Mich App 583, 597; 808 NW2d 541 (2011). "To avoid forfeiture under the plain error rule, three requirements must be met: 1) error must have occurred, 2) the error was plain, i.e., clear or obvious, 3) and the plain error affected substantial rights." *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999). To satisfy the third element, the defendant must show that the error "affected the outcome of the lower court proceedings." *Id*. "Reversal is warranted only when the plain, forfeited error resulted in the conviction of an actually innocent defendant or when an error seriously affected the fairness, integrity or public reputation

-8-

of judicial proceedings independent of the defendant's innocence." *People v Allen*, 507 Mich 597, 614; 968 NW2d 532 (2021) (quotation marks and citation omitted).

A criminal defendant is entitled to an unbiased decision maker, but a defendant must overcome a "heavy presumption of judicial impartiality" when raising a claim of judicial bias. *Jackson*, 292 Mich App at 597-598 (quotation marks and citation omitted). To determine whether a trial court's comments or conduct in the presence of the jury deprived a defendant of the right to a fair trial, we consider whether the comments or conduct "pierces the veil of judicial impartiality," which occurs "when, considering the totality of the circumstances, it is reasonably likely that the judge's conduct improperly influenced the jury by creating the appearance of advocacy or partiality against a party." *People v Stevens*, 498 Mich 162, 170-171; 869 NW2d 233 (2015). We may consider various factors in evaluation claims of judicial bias:

> the nature of the trial judge's conduct, the tone and demeanor of the judge, the scope of the judicial conduct in the context of the length and complexity of the trial and issues therein, the extent to which the judge's conduct was directed at one side more than the other, and the presence of any curative instructions, either at the time of an inappropriate occurrence or at the end of trial. [*Id*. at 164.]

The reviewing court should not "evaluate errors standing alone, but rather consider the cumulative effect of the errors." *Id*. at 171-172.

In the present case, defendant takes exception to the trial court's questioning of the victim at trial. Defendant asserts that the trial court assumed the role of the prosecutor by questioning the victim, veered the testimony into a different topic, and asked the questions in a manner that indicated the trial court believed the victim. A trial judge "is generally permitted to ask questions of witnesses." *People v Swilley*, 504 Mich 350, 372; 934 NW2d 771 (2019). See also MRE 614(b). However, "the central object of judicial questioning should be to clarify. Therefore, it is appropriate for a judge to question witnesses to produce fuller and more exact testimony or elicit additional relevant information." *Stevens*, 498 Mich at 173. "It is inappropriate for a judge to exhibit disbelief of a witness, intentionally or unintentionally." *Id*. at 174. The trial court may "not permit his own views on disputed issues of fact to become apparent to the jury." *Id*. (quotation marks and citation omitted).

Review of the record shows that the trial court initiated questioning of the victim on redirect examination after the victim became flustered and unable to answer the prosecution's questions. After the victim declined the trial court's offer to draw what had happened to him, the trial court questioned the victim about whether his underwear was still on during the assault, whether his penis was erect, and if his penis was inside or outside his underwear. The trial court further asked the victim about defendant's specific acts once he was on top of the victim, stating, "I just want to make sure I get the body parts right." Finally, the trial court clarified that the victim disclosed the assault to his mother after defendant left their house, asking, "[D]o I have the sequencing right?" Defense counsel did not object to any of the trial court's questions.

After reviewing the record, we conclude that the trial court's demeanor and tone in the presence of the jury throughout the trial was not inappropriate. The trial court did not veer the testimony into topics not previously discussed, and the trial court did not question the victim in a

manner so as to express its view of the credibility of the victim's assertions. Rather, the trial court's questions were posed solely to clarify the victim's previous testimony. See *id*. at 173. The trial court asked the victim questions regarding his previous testimony, specifically that he told a forensic interviewer his underwear was still up during the assault and that defendant had touched his penis, put his mouth on the victim's penis, and tried to have the victim's penis penetrate defendant's anus. Because the nature of the sexual acts was an integral element of the charges against defendant and because the victim's testimony was unclear at times, it was not improper for the trial court to clarify with the victim what had happened during the assault. The trial court also withheld its questioning of the witness until the witness became emotional and was unable to speak, making its interjection more appropriate. See *Swilley*, 504 Mich at 381 (noting that "[j]udicial questioning might be more necessary when confronted with a difficult witness who refuses to answer questions or provides unclear answers").

Although the trial court questioned the victim more extensively than any other witness, we note that the victim's testimony was the longest of all the witnesses at trial. Defendant's only witness testified about forensic evidence that had been admitted by stipulation, giving the trial court little to question. Moreover, throughout its questioning of the victim, the trial court conveyed a tone that was professional, unemotional, and unbiased. Nothing about this exchange in which the trial court sought to clarify previous testimony indicated the trial court's opinion of the victim's veracity.

Further, the trial court instructed the jury twice that its comments and questions were not evidence to be considered or indicative of the court's opinion. The court's closing instructions on this issue were as follows:

> My comments, rulings, questions, and instructions are also not evidence. It is my duty to see that the trial is conducted according to the law, and to tell you the law that applies to this case. However, when I make a comment or give an instruction, I am not trying to influence your vote or express a personal opinion about this case. If you believe I have an opinion about how you should decide this case, you must pay no attention to that opinion. You are the only judges of the facts, and you should decide this case from the evidence.

We presume that the jury followed their instructions, and jury instructions are presumed to cure most errors. See *People v Zitka*, 335 Mich App 324, 348; 966 NW2d 786 (2020). There is nothing in the record to indicate that the trial court's conduct was so inappropriate that its instructions to the jury were insufficient. See *Stevens*, 498 Mich at 177-178 (stating that "in some instances judicial conduct may so overstep its bounds that no instruction can erase the appearance of partiality").

In sum, the totality of the circumstances do not demonstrate a reasonable likelihood that the trial court's conduct during trial improperly influenced the jury by creating the appearance of advocacy or partiality against defendant. See *id*. at 171. Further, even if defendant could establish error, he could not establish plain error affecting his substantial rights. See *Carines*, 460 Mich at 763. Defendant argues that the trial court's questioning was outcome-determinative because the prosecution seized on the opportunity to show that the trial court favored the prosecution during closing argument.

After reviewing the prosecutor's closing argument, we conclude that defendant's argument is without merit. The prosecutor's argument merely highlighted that the victim was able to overcome his emotions and testify clearly when questioned by the trial court. This argument emphasized the trial court's status as a neutral party in the proceedings rather than suggesting that the trial court believed the victim. Outside of this argument, defendant does not argue how the trial court's questioning was outcome-determinative. Accordingly, the trial court did not pierce the veil of judicial impartiality, and defendant was not denied a fair trial.

Affirmed.

/s/ James Robert Redford
/s/ Michael F. Gadola
/s/ Michael J. Riordan